GENEVIEVE CANCELLIERI AND PHILIP CANCELLIERI, HER HUSBAND, PLAINTIFFS, v. JOSEPHINE DE MODICA AND JOSEPH DE MODICA, HER HUSBAND, DEFENDANTS.

RE: ALLEGED CONTEMPT OF DONALD V. MORAN, THOMAS SHERMAN, MATTHEW VALLONE, ROBERT J. ALBERQUE, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Superior Court of New Jersey
Law Division

Decided November 4, 1959.

600 

⚷14

*Mr. Joseph N. Donatelli,* assigned attorney for prosecutor John G. Thevos.

*Mr. Nicholas Martini,* attorney for Genevieve & Philip Cancellieri.

*Mr. Harry Green,* attorney for Nicholas Martini.

*Mr. Hyman W. Rosenthal,* attorney for Theresa Greco.

*Mr. Archibald Kreiger,* attorney for Donald V. Moran.

*Mr. Thomas Maher,* attorney for Matthew Vallone.

*Mr. Vincent C. Duffy,* attorney for Robert J. Alberque.

*Mr. Carl Gelman,* attorney for State Farm Mutual Automobile Insurance Company.

KOLOVSKY, J. S. C. Trial of the above-entitled automobile negligence case resulted in verdicts of "no cause for action" on both the main case and the counterclaim. Thereafter, plaintiffs filed a petition, on which an order to show cause issued, by which plaintiffs sought to have Donald V. Moran, Thomas Sherman, Matthew Vallone, Robert J. Alberque, and State Farm Mutual Automobile Insurance Company (hereinafter called "respondents") adjudged guilty of a criminal contempt of court for

"abuse of process and for allegedly examining and obtaining by
fraud, deceit and misrepresentation, confidential and privileged records
consisting of personal Law Diary and personal message book of
Nicholas Martini, attorney for the plaintiffs in the above matter
on February 24, 1959, and for making false and deceitful represen-
tations that they, the said parties or either of them, were requested
and authorized by Nicholas Martini to examine and obtain said
confidential and privileged records, and induce his secretary, Theresa
Greco, to give depositions thereon, in an automobile behind the
Court House, Paterson, New Jersey, on said date, when, in fact, said
Nicholas Martini at no time requested or authorized either of said
parties to examine or obtain said records and obtain a deposition from
his secretary, regarding confidential and privileged matter relating to
the above entitled action then pending and on trial in this Court."

State Farm Mutual Automobile Insurance Company was
defendants' liability insurance carrier; respondent Alberque
is an attorney who was retained by the carrier to appear
for the defendants; Moran is an employee of the insurance
company; Sherman is an investigator retained by Alberque;
and Vallone is Sherman's employee. On the return day of
the order to show cause, respondents pleaded not guilty.

The court now has before it for determination a motion,
made by respondents on completion of the testimony offered
in support of the charges, seeking dismissal of the order
to show cause and a judgment of acquittal upon the ground
that the proofs failed, as a matter of law, to show a situation
justifying a finding that respondents were guilty of criminal
contempt. In addition, respondents Alberque and State
Farm Mutual Automobile Insurance Company respectively
urge that there was no proof that the action complained
of had been authorized or directed by them.

As I remarked during the course of the argument, Vallone's
conduct in misrepresenting to Martini's secretary that he
was an investigator employed and sent by Martini, as the
result of which he induced her to permit him to examine
and take Martini's diary and personal message book and
to give a deposition with respect thereto, was reprehensible
even if his purpose was to attempt to disprove testimony
given by a witness called by Martini as to the date when

he had gone to Martini's office. Indeed, it may give rise to an action for damages by Martini for willful invasion of his rights, and if an attorney authorized or directed such conduct he would be subject to disciplinary proceedings for a violation of professional ethics.

But those questions are not before the court. The sole issue is, has a criminal contempt been shown?· Since, as Judge Jayne said in *Swanson v. Swanson,* 10 *N. J. Super.* 513, 520–521 *(App. Div.* 1950), affirmed 8 *N. J.* 169 (1951):

"A prosecution for criminal contempt is veritably a criminal trial in which the accused possesses most of the substantial rights of a person accused of crime, among which are the presumption of innocence, the burden of proving the alleged guilt beyond a reasonable doubt and the rules of evidence applicable in the trial of an indictment * * *.

Its title or label may now give it the ostensible appearance of a motion or integral component of the action in which the alleged public offense occurred, but the proceeding inaugurated to determine the guilt or innocence of the accused continues in truth and reality to be a new, independent, and collateral matter * * *."

the test to be applied on this motion is that applicable to such motions in criminal trials: Is there legal evidence before the court from which an inference can be legitimately drawn that respondents were guilty of the criminal contempt charged? *R. R.* 3:7–6; *State v. Kollarik,* 22 *N. J.* 558 (1956).

Examination of the many cases dealing with criminal contempt which are found in the books leads me to the conclusion that the conduct disclosed by the evidence would not justify conviction of the respondents for criminal contempt.

A criminal contempt, unlike a civil contempt, whose object is the vindication of private rights, "concerns itself with conduct directed against the authority or dignity of the court. * * * It involves the element of public injury or offense." *In re Bozorth,* 38 *N. J. Super.* 184, 188 *(Ch. Div.* 1955); *In re Caruba,* 139 *N. J. Eq.* 404 *(Ch.* 1947), affirmed 140 *N. J. Eq.* 563 *(E. & A.* 1947), *certiorari*

denied 335 *U. S.* 846, 69 *S. Ct.* 69, 93 *L. Ed.* 396; *In re Jenkinson,* 93 *N. J. Eq.* 545 (*Ch.* 1922); see also *N. J. S.* 2A:10.

 The contempt power of the court. is one to be exercised with caution, with judicial self-restraint, and should not be invoked absent a clear showing. *In re Bozorth, supra; Edwards v. Edwards,* 87 *N. J. Eq.* 546, 548 (*Ch.* 1917); *N. L. R. B. v. Deena Artware, Inc.,* 207 *F. 2d* 798 (6 *Cir.* 1953).

As Vice Chancellor Lane said in *Edwards v. Edwards, supra,* 87 *N. J.* at *page* 548:

"The power to punish for contempt is an arbitrary power, and should be used only when absolutely necessary in the interest of justice, and then with great care and discretion."

And as Judge Haneman said in *In re Bozorth, supra,* 38 *N. J. Super.* at *page* 195:

"In any event, since courts in criminal contempt proceedings are sitting, to all intents and purposes, on their own function, the power to punish should be used only in flagrant cases and with the utmost forbearance. It is always better to err on the side of tolerance and even with disdainful indifference."

 Although lack of precise precedent treating a particular fact situation as a criminal contempt would not prevent a court from adjudicating it to be ·such if it should determine that the act complained of tended to obstruct, hinder, or hamper justice in its due course (17 *C. J. S. Contempt* § 8, *p.* 11; *State ex rel. Turner v. Albin,* 118 *Ohio* 527, 161 *N. E.* 792 (*Sup. Ct.* 1928)), the absence of such precedent must give the court pause to make certain that it is not unwarrantedly expanding the area in which it should invoke such power. 17 *C. J. S. Contempt* § 8, *p.* 11.

 The evidence does not show that the acts complained of tended to obstruct, hinder, or hamper justice. (As to the meaning of the phrase "obstructing justice" see, for

example, *In re Caruba,* 139 *N. J. Eq.* 404 *(Ch.* 1947), affirmed 140 *N. J. Eq.* 563 *(E. & A.* 1947), *certiorari* denied 335 *U. S.* 846, 69 *S. Ct.* 69, 93 *L. Ed.* 396 (1948); *Shackelford v. Commonwealth,* 185 *Ky.* 51, 214 *S. W.* 788 *(Ct. App.* 1919); *State v. Shumaker,* 200 *Ind.* 623, 157 *N. E.* 769, 774, 162 *N. E.* 441, 163 *N. E.* 272, 58 *A. L. R.* 954 *(Sup. Ct.* 1927); *In re Bozorth,* 38 *N. J. Super.* 184 *(Ch. Div.* 1955); see also *Ex parte Stroud,* 167 *Ark.* 331, 268 *S. W.* 13, 37 *A. L. R.* 1111 *(Sup. Ct.* 1929)).

While it is true that action taken to prevent a witness from testifying or to induce him to avoid appearing in court may be deemed to constitute criminal contempt *(In re Caruba, supra; In re Hand,* 89 *N. J. Eq.* 469 *(Ch.* 1918)), it does not conversely follow that misrepresentation or other action taken to bring a witness to court constitutes a contempt. ▮ A finding of criminal contempt, therefore, cannot be based on the misrepresentation and other action taken to bring Mrs. Greco to the courtroom.

Nor is such basis to be found in the service of a subpoena to testify on Mrs. Greco as she was entering the courtroom; it was not done under such circumstances as to cause a commotion or disturbance. *Baumgartner v. Baumgartner,* 273 *App. Div.* 411, 77 *N. Y. S.* 2d 668 *(App. Div.* 1948).

*In re Bowers,* 89 *N. J. Eq.* 307 *(Ch.* 1918), cited as supporting the charges against the respondents, is not pertinent. In that case the respondent, father of plaintiff-husband in a divorce suit, threatened the wife's solicitor with political and other pressures to get him to withdraw from the case, an act which was clearly contempt, since it tended to deprive the court of the services of one of its officers prosecuting a cause before it and constituted a step towards a collusive divorce.

But the proofs in this case do not show that the conduct complained of was intended to, or that it did, have a coercive effect on Martini.

▮ We come now to the portion of Vallone's actions which comes closest to constituting a contempt of court—

his action in obtaining by misrepresentation and deceit and examining Martini's diary and message book.

Even if it were to be assumed that the conduct complained of constituted an unlawful search and seizure, no authority has ever held that unlawful search and seizure constitutes a contempt of court. *Cf. Blumrosen, "Contempt of Court and Unlawful Police Action,"* 11 *Rutgers L. Rev.* 526; see *Eleuteri v. Richman,* 26 *N. J.* 506 (1958), *certiorari* denied *sub nom. Eleuteri v. Furman,* 358 *U. S.* 843, 79 *S. Ct.* 52, 3 *L. Ed. 2d* 77 (1958).

Nor does the fact that Martini is an attorney make the conduct complained of a criminal contempt.

That an attorney is an officer of the court is settled (*In re Merrill,* 88 *N. J. Eq.* 261 (*Ch.* 1917); *In re Bowers,* 89 *N. J. Eq.* 307, 309 (*Ch.* 1918)); but he is not the court nor one of its ministerial officers. See *Cammer v. United States,* 350 *U. S.* 399, 76 *S. Ct.* 456, 100 *L. Ed.* 474 (1955). I have no doubt but that one using Vallone's tactics to obtain documents from the chambers of a judge or from court personnel would be adjudged guilty of criminal contempt (*In re Hayden,* 100 *N. J. Eq.* 50 (*Ch.* 1926)), but I can find no warrant for extending that summary remedy to such action taken not in the presence of the court (*In re Caruba,* 139 *N. J. Eq.* 404 (*Ch.* 1947); *Van Sweringen v. Van Sweringen,* 22 *N. J.* 440 (1956)), but in a lawyer's office and outside the courthouse with respect to a lawyer's diary and message book. For such injuries the attorney must look to the usual remedies. See *McCann v. New York Stock Exchange,* 80 *F. 2d* 211 (2 *Cir.* 1935).

In view of my ruling, it becomes unnecessary to consider the additional grounds for the motion urged by the respondent Insurance Company and Alberque.

Respondents' motion for judgment of acquittal is granted.