### In re ATKINS, U. S. Marshal.*

#### (District Court. Sitka. 1887.)

#### No. ——.

**1. CONTEMPT ⬧18—OFFICERS.**

 The judge of the district court appointed three appraisers under sections 939, 940, Rev. Stat. U. S. 1878 (U. S. Comp. St. 1916, §§ 1565, 1566), to appraise and place a value upon certain fur seal skins seized by United States revenue cutters in Bering Sea, and brought to Sitka for condemnation and sale; the United States marshal interfered with the appraisers and forbade them from appraising the skins claiming they were in his possession. *Held*, guilty of contempt of court.

**2. CRIMINAL LAW ⬧998—JUDGMENT—COURTS—JURISDICTION.**

 For contumacious opposition to the order of the court the United States marshal was fined $50 and paid the fine to the clerk; subsequently he made a motion to have the entry of said fine expunged from the record, remitted, and the money refunded, denying any intention to disregard or in any way disrespect or violate the order of the court. *Held* that, while courts may, during the term, correct or recall judgments in either civil or

⬧See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Alaskan Reports, Haydon, 1888, vol. 1, p. 67.

criminal cases, which are unexecuted, yet that, when a fine has been imposed, paid, and the record completed, the court has no further power over the subject-matter, and can give no relief.

DAWSON, District Judge. Certain fur seal skins had been seized by the United States revenue cutter Rush, in that portion of Bering Sea claimed by the United States, brought to Sitka, condemned by the judgment of the District Court as forfeited, and ordered to be sold. The allegation in the libel of information was, and the evidence showed, that the masters of the vessels upon which the skins were found, and from which they were taken by the officers of the revenue cutter, were violating section 1956, Revised Statutes (U. S. Comp. St. 1916, § 8850), in relation to the protection of seal life in Alaskan waters. Subsequent to the judgment of forfeiture, and prior to the day fixed for the sale, an application was made to the court for the appointment of appraisers to view and ascertain the value of the skins, with a view upon the part of the owners of giving bond therefor, and appealing the case. Upon the application made, the court, acting under a mandatory statute (see sections 939 and 940, Revised Statutes [U. S. Comp. St. 1916, §§ 1565, 1566]), as well as a rule in admiralty (see rule 66), appointed three men to examine and appraise said property. The evidence of the appraisers filed in court shows that Bartin Atkins, as marshal of the District of Alaska, and as the executive officer of the court, entered the warehouse where said property was stored, and where the appraisers were at work in the performance of their sworn duty, and made inquiry as to whether the appraisers were going to open all the sacks, and, being answered in the affirmative, protested, and as marshal forbade the appraisers to proceed with the work of examination and appraisement. The appraisers appointed and sworn as aforesaid, reported the marshal to the court, and acting upon the report of said appraisers, the court imposed a fine of $50 on the marshal, and directed the appraisers to proceed with their work. The marshal immediately, or shortly thereafter, paid the fine so imposed to the clerk, and now asks by his motion to have the entry of said fine expunged from the record, remitted, and the money refunded, alleging in substance that he, as marshal, charged with the custody, care, and protection of the property, and as the executive officer of the court, had a right to protest against the manner and the method

adopted by the appraisers to ascertain the condition and value of the property, but denying any intention to disregard or in any way disrespect or violate the order of the court. There is very little conflict in the statement of the appraisers and that of the marshal, in relation to what occurred in the warehouse where the property was stored.

When the appraisers were appointed and sworn to faithfully and impartially discharge the duty enjoined upon them, who should dictate to them the manner by which they could best arrive at a proper and just valuation of the property? They were for the time officers of the court, and they only could determine the most satisfactory method of examining and placing an estimate upon the property. Why appoint appraisers, if their discretion and judgment is to be controlled by some other person? True, the custody of the marshal was supreme in the matter of protecting the property from loss or destruction, but had he a right to interfere with the functions and prerogative of the appraisers? I think not, and for various reasons. The law requires the court, when the proper application is made, to appoint appraisers, and when they are appointed and sworn, and enter upon the discharge of their duties, their power is supreme until they make their report. Of course, upon a proper showing of bias or unfairness, the court might modify or set aside their report. But even then the proof of such conduct upon the part of appraisers, or such bias as would shock honesty, or lead the judicial mind to the inevitable conclusion that some wrongful method had been adopted, should be clear, positive, and abiding; otherwise the court would not be warranted in interfering. In this case I have no doubt from the lights before me that the appraisers entered upon the discharge of their duties with a full knowledge and realization of the nature and character of the oath they had taken, and began work in good faith.

The question now arises: Was the act of the marshal contumacious to such an extent as to call for action upon the part of the court, and to merit punishment? Courts of justice have an inherent power to punish all persons for contempt of their rules, orders, and disobedience of their process, and for disturbing them in their proceedings. 21 Me. 550; 5 Ired. 199; 37 N. H. 450.

Blackstone (see volume 4, page 288), in speaking of contempt, says:

"The contempts that are thus punished are either direct, which openly insult or resist the powers of the court, or the persons of the judge who preside, or else are consequential, which, without such gross insolence or direct opposition, plainly tend to create an universal disregard of their authority."

Contempts are of various kinds. Some may arise in the face of the court, such as obstinacy, perverseness, or prevarication; others, by disobeying or treating with disrespect the writ, rules, or orders of the court. In the Judiciary Act of 1789 (1 Stat. 73, c. 20) the power is expressly conferred upon the United States courts to punish for contempts of their authority all persons, including officers of the courts, for disobedience of any rule, writ, process, or order, decree, or command of the courts. See section 725, Revised Statutes (U. S. Comp. St. 1916, § 1245).

When Congress extended the laws of the United States relating to customs, commerce, and navigation to and over the district of Alaska, we are to infer that the rules appertaining to the enforcement and administration of such laws were extended also. The Alaska Act and the customs laws are in pari materia, relating to kindred subjects, and subject to the same rules of interpretation; and no court can administer the laws if its executive officers are permitted to annul, violate, or set at defiance its orders. Not only public law, but express provisions of statute, as well as the rules in admiralty established by the United States courts, sanctioned and approved by the highest judicial tribunal in the land, require, command, and direct the appointment of appraisers upon proper application in all cases of forfeiture, where an appeal is prayed for. The reason for this rule is too obvious to require discussion. Without an appraisement of seized property and an ascertainment of its value, the court could not know the amount the bond should approximate, or, in case judgment should ultimately be rendered for the claimant and against the government, it would be difficult to determine the amount to be refunded. The allegation in the motion for a remittance of the fine imposed, that in the judgment of the marshal the property would depreciate in value in consequence of the mode adopted by the appraisers, is no defense. Such a species of defense is, in my judgment forbidden by that universal principle of law which forbids a party to avail himself of his own wrong.

This maxim lies at the very foundation of jurisprudence, and is applied in cases of contempt as well as in all civil and

criminal proceedings. To allow an executive officer to determine the propriety of an order of the court, and clog the wheels of the judicial machinery, would be subversive of the great objects and purposes of government, destroy the independence of the judiciary, and lead to anarchy and confusion.

If one such officer may assume infallibility, all other like officers may do the same, and thus put an end to civil government, one of whose cardinal principles is subjection to the laws. It should be borne in mind that every person who accepts public office takes it with all its responsibilities, and voluntarily pledges himself to the appointing power that his duty shall be fully met and promptly discharged.

It is wholly immaterial that outside parties may have suggested the impropriety of the mode adopted by the appraisers. No public office should be influenced or shrink from the performance of a duty imposed by law because public sentiment or scheming outsiders may be opposed either to the law or the duty of the officers. There can be no higher exhibition of moral courage than a persistent performance of duty, unswayed by popular clamor and undismayed by popular disapprobation. However much outside sentiment of to-day may denounce the officer, the sober second thought of to-morrow will as loudly applaud. Duty, properly performed, invariably brings its reward in the end. This is unpleasant to me, but a duty is devolved. I cannot shirk it. Where the law imposes a penalty, it necessarily implies a prohibition of the act done. While it is true that a judge ought to be patient and tolerant of everything which may be only the sudden outburst of passion, or disappointment, still the court's authority must be respected, upheld, and obeyed.

The record shows what property was to be examined and appraised, and the executive officer of the court is charged with a knowledge of that fact, and, while charged with the duty of caring for and protecting the property from waste, he had no right to interfere with the appraisers. They were as supreme in their capacity as he was in his.

However much the court may have been inclined to modify or remit the fine, it could not be done after the fine was paid. A case very similar in some aspects arose in the state of North Carolina, as late as 1885, in which the Supreme Court of that state held that, while courts may, during the term, correct or recall judgments in either civil or criminal cases, which are

unexecuted, yet that, when a fine has been imposed, paid, and the record completed, the court has no further power over the subject-matter, and can give no relief. See State v. Warren, 92 N. C. 825.

The duties of United States marshals are sharply and specifically defined by law. See section 787, Revised Statutes (U. S. Comp. St. 1916, § 1311). They are executive officers of the court for whose district they are appointed. Their powers and duties are clearly set forth, but they are nowhere authorized, empowered, or warranted to set aside, annul, disobey, or ignore a judgment, decree, or order of the court.

Forbidding the appraisers to proceed with the work assigned to them was such a flagrant disregard of the order of the court as to require action. The penalty imposed was moderate, but probably sufficient to teach a lesson.

The motion will be denied.