Cordts, Appellant, vs. Reuter and another, Defendants:
Faeser, Sheriff, Respondent.

*December 10, 1936—January 12, 1937.*

For the appellant there was a brief by *Sauthoff, Hansen, O'Brien & Kroncke* of Madison, and oral argument by *Anthony E. O'Brien* and *George Kroncke, Jr.*

For the respondent there was a brief by *Blum & Blum* of Monroe, and oral argument by *Bruce M. Blum*.

MARTIN, J. The appellant obtained a judgment in the circuit court for Green county on February 23, 1935, against the defendants Wesley Reuter and Helen Reuter, in the sum of $1,518.83. On the same day, an execution was issued out of said court on the judgment and delivered to the respondent Faeser, as sheriff of Green county, which in usual form directed him to satisfy said judgment out of the personal and real property of the defendants, etc., and to return the execution to the clerk of said court within sixty days after its receipt.

It appears that on or about February 27, 1935, one of the plaintiff's attorneys went to Monroe, Wisconsin, examined the records in the estate of Charles Reuter (father of the defendant Wesley Reuter) and found that Wesley Reuter was one of five heirs in that estate; that final judgment had been entered on January 21, 1935; that from a receipt filed in the county court on January 15, 1935, by said Wesley Reuter, and by the final judgment of said court, Wesley Reuter had received $896.91, and that there was assigned to him a one-fifth interest in the personal property and a one-fifth interest in three pieces of real estate, all located in Green county. In the Charles Reuter estate, the real estate was appraised at $11,040 and the personal estate at $952.12. One piece of real estate appraised at $6,000 was subject to the life estate of Rose Reuter (mother of Wesley Reuter).

On March 5, 1935, respondent sheriff wrote to the plaintiff's attorneys, inclosing the execution, stating that he was returning it unsatisfied. No return on the execution was made to the court at that time. On March 14, 1935, plain-

tiff's attorneys wrote to the respondent calling his attention to the fact that defendant Wesley Reuter had inherited a one-fifth interest in three pieces of real estate, describing one of the pieces in detail, and also calling attention to the fact that the records in the county court showed Mr. Reuter had received $896.91. The attorneys' letter concluded as follows:

"I am, therefore, returning the execution to you and ask that you levy on his interest in this real estate and personal property, if the same can be found, and, if necessary, we will proceed to a sale of his interest in the real estate first described above in an effort to collect this judgment. Kindly advise me as to your progress in this execution."

On March 15, 1935, two of plaintiff's attorneys saw respondent in his office in the courthouse at Monroe. They exhibited to him a copy of their letter of March 14th, and again advised him that the records in the estate of Charles Reuter would disclose the properties which had been assigned to the defendant Wesley Reuter. On this occasion, respondent told plaintiff's attorneys that he had seen Wesley Reuter, but because of the snow-blocked condition of the roads, it had been impossible to get out to his property, which was located on farms, but as soon as the roads were open, he would go out and make a levy. Thereafter nothing appears to have happened until on July 5, 1935, when plaintiff's attorneys wrote respondent calling his attention to their letter of March 14th and their conference of March 15th, further stating: "Kindly advise me if you have made this levy as promised, and, if so, what steps have been taken since that time." Respondent made no reply to the plaintiff's attorneys' letter of July 5th, and again on July 19, 1935, the attorneys wrote the sheriff asking what had been done on the execution. On September 10, 1935, the plaintiff's attorneys wrote respondent stating that if he had not made a levy the execution was valueless because of lapse of time and requested him to return the execution. It was returned wholly unsatisfied on September 11, 1935.

Upon return of the execution, supplementary proceedings were instituted against the defendant Wesley Reuter, and he was examined in said proceedings on October 9, 1935. From his testimony it appears that at the time of the settlement of his father's estate he was indebted to it on a note given to his father which, with accrued interest, amounted to $660; that as one of the heirs he contributed $100 toward his father's funeral expenses, receiving only the difference in cash. This transaction preceded the date of appellant's judgment.

It further appears that prior to the date of the judgment in question the defendant Wesley Reuter and other heirs had sold their interest in the one-hundred-acre tract of land to the brother William Reuter for $7,500. The deed was recorded February 4, 1935. William assumed a $3,500 mortgage against the property and gave back to the heirs a mortgage for $3,200. In other words, the value of the equity in the one-hundred-acre tract was figured at $4,000, of which amount William was entitled to a one-fifth interest, or $800. Deducting his share from the value of the equity left $3,200 to be divided among the other four heirs, including the defendant Wesley. There is no evidence that this $3,200 mortgage was recorded or that the respondent sheriff or plaintiff's attorneys had any knowledge as to the existence of the mortgage at the time the execution was issued or at any time while the execution was in the hands of the respondent. It further appears that the interest of Charles Reuter, deceased, in the livestock and feed on the William Reuter farm was appraised at $311, and that his interest in the livestock and feed on the Wittwer farm was appraised at $323. Wesley testified on the supplementary proceedings that he had given his interest in the personal property on the William Reuter farm to William at the time he purchased the farm.

Another farm consisting of ninety-two acres and known as the "old homestead" appears to have been sold to Clarence Reuter. The deed to this property appears to have been delivered in escrow. The consideration mentioned is $7,200 to

be paid upon the mother's death. However, this transaction is several months subsequent to the date of the plaintiff's judgment.

Plaintiff also has the lien of her judgment against the interest of the defendants in the New Glarus property which is subject to a mortgage for nearly its full value.

In the trial court's order discharging the order to show cause, and on the facts as above indicated, the court found: (1) That Fred W. Faeser, sheriff, has not been guilty of either negligence or misconduct in the discharge of his official duty in connection with the execution delivered to him in said action; and (2) that the plaintiff has suffered no actual loss or injury by reason of said sheriff failing to perform his official duty in said matter. These findings are contrary to the undisputed facts.

Sec. 59.23 (4), Stats., defining the duties of sheriffs, provides:

"The sheriff shall: . . . (4) Personally, or by his under-sheriff or deputies, serve or execute according to law all processes, writs, precepts and orders issued or made by lawful authority and to him delivered."

Sec. 272.05 (1), Stats., provides:

"*Execution, how issued; contents.* The execution . . . shall require the officer, substantially as follows: (1) If it be against the property of the judgment debtor, to satisfy the judgment out of the personal property of such debtor, and if sufficient personal property cannot be found, out of the real property belonging to him on the day when the judgment was docketed in the county or at any time thereafter."

Sec. 272.06, Stats., provides:

"*Execution, when returnable.* Every execution shall be made returnable, within sixty days after its receipt by the officer, to the clerk of the court from which it issued but if the officer has levied upon property previous to the expiration of said sixty days he may retain such execution until he has

sold the property. The officer shall state in his return how he executed the writ."

Sec. 272.24, Stats., provides:

*"Indemnity may be required.* If there is any reasonable doubt as to the ownership of the property or as to its liability to be taken on the execution the officer may require sufficient security to indemnify him for levying upon such property."

It is hardly necessary to comment that upon the foregoing statement of facts the respondent sheriff neglected and violated his clear duty as outlined in the statutes above quoted.

Sec. 295.01 (1), Stats., relating to contempt in civil actions, provides:

*"Contempt power of courts and judges.* Every court of record and every judge of such court at his chambers shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty or any misconduct by which the rights or remedies of a party in an action or proceeding depending or triable in such court or before a court commissioner for the same county may be defeated, impaired, impeded or prejudiced in the following cases:

"(1) All . . . sheriffs . . . duly elected or appointed to perform any judicial or ministerial services for any misbehavior in such office or trust or for any wilful neglect or violation of duty therein; for disobedience of any process of such court or of any lawful order thereof, or of any lawful order of a judge of such court or of any officer authorized to perform the duties of such judge."

Sec. 295.04, Stats., provides:

*"Order to show cause; attachment.* In a case specified in either section 295.02 or 295.03 [which relate to misconduct committed in the immediate view of the court and to failure to pay money as ordered by the court] the court may, in its discretion, and in all other cases the court shall, upon being satisfied by affidavit of the commission of the misconduct, either make an order requiring the accused party to show cause at some reasonable time to be therein specified why he should not be punished for the alleged misconduct or shall issue an attachment to arrest such party and to bring him

before such court to answer for such misconduct. Such order to show cause may be made or attachment may be issued by any judge in vacation, but must be made returnable to the court."

In *Elmore v. Hill,* 46 Wis. 618, 621, 1 N. W. 235, the court said:

"The degree of diligence required of a sheriff or other officer, when an execution is placed in his hands for collection, has been much considered by the courts. The result of the adjudications on the subject seems to be, that, on receipt of the execution, in the absence of specific instructions, the officer must proceed with reasonable celerity to seize the property of the debtor, if he knows, or by reasonable effort can ascertain, that such debtor has property in his bailiwick liable to seizure on execution. The officer must do this as soon after the process comes to his hands as the nature of the case will admit."

Sec. 295.14, Stats., provides:

"If an actual loss or injury has been produced to any party by the misconduct alleged the court *shall* order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss. Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings."

The appellant contends, under the authority of *State ex rel. Mann v. Brophy,* 38 Wis. 413, that the order of the lower court should be reversed, with instructions to enter an order finding the respondent guilty of contempt and assessing as the penalty therefor the full amount of the execution with costs and interest. The facts do not warrant the imposition of such a harsh penalty. The appellant still has her lien

against the two pieces of real estate as to Wesley Reuter's interest therein as of the date of her judgment. Of course, it was the respondent's duty as sheriff to make a levy under the execution upon the defendant's interest in the real estate. What damage, if any, resulted by reason of the respondent's failure to make such levy, we cannot say. It does appear that Wesley Reuter did have an undivided one-fifth interest in certain personal property located on the Wittwer farm at the time the execution was issued and for several months thereafter. The respondent should have seized the defendant's interest in this personal property under the execution in his hands. The respondent must be held guilty of contempt because of his failure to perform his statutory duties as required by the mandate of the execution. What fine or penalty should be imposed under all the circumstances is a matter for the consideration of the trial court.

*By the Court.*—Order reversed. Record remanded for further proceedings according to law.