Matthias, J.
Several interesting and highly important issues are raised by this appeal. Among the questions which must be given our consideration are these: (1) What was the duty of the sheriff in executing the writ of replevin? (2) Can defendants as strangers to the writ in question be guilty of contempt relative thereto? (3) If an act of contempt was proved in this cause, was it in the nature of direct or indirect contempt of court? (4) Is the proceeding relative to the contempt charge civil or criminal in character? (5) Is there substantial evidence of each defendant’s participation in the alleged act of contempt? (6) If the contempt is criminal in nature may a voluntary association be made party defendant to such a cause and be found guilty of contempt? (7) What is the effect, if any, of the alleged “agreement” between the court’s officer and defendant Bowen upon defendants’ liability for contempt of court? (8) Is intent to commit a contempt a necessary element of proof to *79 support a charge of contempt, and, if so, does the evidence herein support an inferential finding of such intent on the part of the defendants? (9) What is the effect, if any, of the “no bill” returned by the Grand Jury, for alleged violation of the criminal code, upon defendants’ liability for contempt of court?
We are concerned with two statutes.
Section 2705.01, Revised Code, entitled, “Summary Punishment for Contempt,” provides:
“A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.” (Emphasis added.)
Section 2705.02, Revised Code, entitled, “Acts in Contempt of Court,” reads in part:
“ (A) Disobedience of, or resistance to,.a lawful writ, process, order, rule, judgment, or command of a court or an officer;
“(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions * * (Emphasis added.)
Violation of the former statute (Section 2705.01) is regarded as “direct contempt” or “active contempt” of court whereas violation of the latter statute (Section 2705.02) is considered to be “indirect contempt” or “constructive contempt” of court. The former statute simply represents a codification of the law of contempt as it exists at common law. When the charge is direct contempt, that is, an act committed in the “presence of the court,” the contemnor may be proceeded against summarily by the court without the necessity of a written charge or a hearing as is required in cases arising under the indirect contempt statute (Section 2705.02, supra, Revised Code). In re Matter of Lands, 146 Ohio St., 589, 67 N. E. (2d), 433. In addition, the penalties assessed for violations of the indirect contempt statute are prescribed by the Code (Section 2705.05, Revised Code). But Section 2705.05 does not apply to offenses under the direct contempt statute. Myers v. State, 46 Ohio St., 473, 22 N. E., 43, 15 Am. St. Rep., 638. However, it is provided by statute that when the contempt consists of the omission to do an act which the accused can yet perform, he may be imprisoned until he performs it. Section 2705.06, Revised Code,
*80 The defendants in the case at bar were apparently charged with violation of the indirect contempt statute, since a written charge was filed, an adversary hearing was had, and penalties were assessed, all as provided by statute.
This court has stated that, when the General Assembly has prescribed the procedure for the exercise of the contempt power, it then becomes the duty of the court to follow such procedure. In re Matter of Lands, supra. The opinion in that case, however, in no way implies that courts are bound by such statutory procedure in cases of direct or summary contempt.
That a court inherently, and quite apart from any statutory authority or express constitutional grant, possesses such contempt power has been the rule from time immemorial. See Respublica v. Oswald (Pa., 1788), 1 Dallas, 343; Ex Parte Robinson (1873), 86 U. S., 505, 22 L. Ed., 205; Ex Parte Dalton (1886), 44 Ohio St., 142, 5 N. E., 136, 58 Am. Rep., 800; In re Matter of Lands, supra: Wind v. State (1921), 102 Ohio St., 62, 130 N. E., 35.
The vital nature of a court’s inherent power to punish for contempt has nowhere been more ably stated than by Judge Shauck, in 1896:
‘ ‘ The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised.” Hale v. State, 55 Ohio St., 210, 213, 45 N. E., 199, 60 Am. St. Rep., 691, 36 L. R. A., 254.
If a court has inherent power to punish for contempt summarily, it must by the same token have the power to determine *81 the kind and character of conduct which constitutes such contempt. State, ex rel. Turner, Atty. Genl., v. Albin, 118 Ohio St., 527, 161 N. E., 792. Consequently, the fact that Section 2705.02, Revised Code, inferentially classifies an act of resistance to a lawful court process or order as an act of indirect contempt does not limit the power of a court to determine, in its sound discretion, whether such an act constitutes direct or indirect contempt. Power which the Legislature does not give, it cannot take away. If power, distinguished from jurisdiction, exists independently of legislation, it will continue to exist, notwithstanding legislation. Hale v. State, supra; State, ex rel. Turner, v. Albin, supra.
Although it is undoubtedly true that the most obvious examples of acts constituting direct contempt take place “in the presence of or so near the court or judge,” a direct contempt is not confined to disorderly or obstreperous acts in the presence of the court itself. In re Estate of Wright, 165 Ohio St., 15, 25, 133 N. E. (2d), 350. A “physical presence test” is not always an adequate guide in determining whether offensive acts are of such gravity as to seriously interfere with the administration of justice so as to warrant summary punishment. This court has on occasion recognized that direct contempts may take place beyond the physical presence of the court. In Hale v. State, supra, a summary conviction for contempt was upheld where the defendant had caused the removal of a witness from the county of his residence when such witness was under subpoena to attend the trial of a pending cause. Where libelous matter was printed in a newspaper concerning the fitness of a judge to preside in a pending cause, the author of such libel was punished summarily for contempt, even though the principal circulation of such paper occurred at a great distance from the courtroom. Myers v. State, supra.
We note that Judge Shauck in the Hale case, supra, included among those powers which are inherent in a court the power to enforce process to the end that effect may be given to judgments. Certainly, it is difficult to conceive of a power more essential to the administration of justice or one more vital to the very existence of a court itself. A court’s historic function is subverted and its purposes frustrated if persons to whom orders *82 are directed successfully challenge the authority of a court by disregarding or refusing to obey such orders. Equally subverting and equally frustrating to the administration of justice are acts which interfere with officers of the court who are charged with the essential duty of executing such orders and process. We believe that such functions are so basic and so essential that a court may be deemed constructively present wherever any of its officers is engaged in the prosecution of the business of the court according to law. See Beach, Jr., v. Beach, 79 Ohio App., 397, 74 N. E. (2d), 130.
Consequently, the offensive acts charged against the defendants in the instant case constituted acts of direct contempt of court, and a court’s power to punish therefor cannot be limited by the Legislature. Because of this fact, the trial judge in the case at bar had the power to try these defendants summarily and he was not bound by the limits of the punishments set forth in the statute (Section 2705.05, Revised Code). However, it is the better practice, and strongly recommended, that, where a judge has no personal knowledge of the alleged act of contempt because of its commission beyond his own actual physical presence, the procedure outlined in the statute, requiring a written charge, notice to the defendant of such charge, an adversary hearing upon the issues, together with an opportunity for the defendant to be represented by counsel, be adhered to strictly. The proceeding in the case at bar did in fact follow such statutory procedure.
We now turn to the question of whether the present contempt proceeding is criminal or civil in nature. Although there has never been a clear line of demarcation between criminal and civil contempts, it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts. O’Brien v. People, ex rel., 216 Ill., 354, 368, 75 N. E., 108, 108 Am. St. Rep., 219. Sentences for criminal contempt are punitive in nature and are designed to vindicate the authority of the court. Gompers v. Bucks Stove & Range Co., 221 U. S., 418, 441, 55 L. Ed., 797, 31 S. Ct., 492; United States v. United Mine Workers of America, 330 U. S., 258, 302, 91 L. Ed., 884, 67 S. Ct., 677. On *83 the other hand, the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court. Second National Bank of Sandusky v. Becker, 62 Ohio St., 289, 56 N. E., 1025, 51 L. R. A., 860. However, in some instances, as for example in the ordinary injunction case where violation of a restraining order is involved, the same act may constitute both a civil and criminal contempt. The proceeding in such cause is properly characterized as being quasi-criminal in nature. Brimson v. State, 63 Ohio St., 347, 58 N. E., 803.
In no instance, however, is a contempt proceeding a criminal action or proceeding in a strict sense but it is a special proceeding which may be criminal in character but which is governed by the provisions of the statutes outside the criminal code. Indictment, arraignment, plea and trial by jury are not necessary procedures in cases of criminal contempt. However, because contempt proceedings affect personal liberty, the proceedings and the statutes governing them must be strictly construed. White v. Gates, 42 Ohio St., 109.
In the present case, defendants ’ interference with the sheriff in his attempt to execute the court’s order clearly constituted an offense against the dignity and the process of the court. The purpose of the penalty imposed upon the defendants herein was to punish rather than to coerce. As a result, the proceeding here is one in criminal contempt.
From the record, it is obvious that each defendant’s participation in the offensive acts here in question was established by clear and convincing evidence. Defendant Bowen, vice-president of defendant union, was present on the picket line at the time the sheriff made his initial attempt at entrance into the OlinMathieson plant. Bowen knew of the nature of the sheriff’s business. In fact, the sheriff actually read a part of the writ of replevin to that defendant. The record is clear that Bowen knew precisely that the sheriff was charged with the duty of entering the plant premises in order to remove the goods to be replevied. Not only did that defendant personally take part in the successful effort to keep the sheriff out of the plant but he made no attempt, as a responsible union official, to effectuate the removal of the members of his union who were blocking the *84 sheriff’s path. Equally contemptuous conduct on the part of defendant Bowen has been established by his own admissions in testimony. Bowen testified at length concerning the alleged “agreement” with the sheriff to feign an attempt at entrance into the struck plant. Such alleged connivance, for the purpose of preventing the execution of a lawful court process, with a court’s executive officer constitutes offensive and contemptuous conduct of a most serious and grievous character.
The participation of defendant Neuhart in the acts of contempt also is clearly established. Neuhart, although not present at the plant during the sheriff’s initial attempt at entrance, was present at the second attempt. Such defendant conceded in his testimony that he saw the writ of replevin as it lay on the seat of the sheriff’s automobile. That Neuhart was perfectly aware of the nature of a replevin writ is established by his admission to the effect that he, Neuhart, had contacted the sheriff previous to the date in question relative to the possibility of attempted execution of the writ. Neuhart, too, as the principal officer of his union, made no attempt to clear his men from the path of the sheriff’s car.
Defendant union’s responsibility for the contemptuous acts stems, of course, from the acts of its officers as representatives of the union. The acts of the union officers were the acts of the union. United States v. United Mine Workers of America, supra. Union leaders are charged with the responsibility of communicating their knowledge of a court officer’s identity and of his business to the union members, especially where such members are in a position to interfere with or obstruct such court officer in the performance of his lawful duties.
The interests of orderly government demand that respect and compliance be given to the orders issued by courts possessed of jurisdiction over subject matter and over litigants. One who defies public authority, be that one an unincorporated association of laboring men, or an individual, or a corporation, and who willfully disobeys a court order must pay the penalty. United States v. United Mine Workers of America, supra; United States v. Brotherhood of Railroad Trainmen, 95 F. Supp., 1019.
We have held that there is no provision in the criminal laws *85 of this state for the prosecution of an unincorporated voluntary group or association as an entity and that such group does not come within the definition of “whoever” in the criminal code. State v. Fremont Lodge of Loyal Order of Moose, 151 Ohio St., 19, 84 N. E. (2d), 498. As previously pointed out, however, contempt proceedings are special proceedings not provided for in the criminal code.
The character of modern labor unions has been well characterized in a recent case of the Court of Appeals of California:
“* * * Each union has its own well-defined function and bears a certain relation each to the other, and each of them toward the members. Each has all the aspects of an entity. Each, in a very practical sense, is a real person, especially in its dealings with others. Each exemplifies the fact that labor unions are no longer the small unimportant organizations they were once considered. * * * It is obvious that such organizations are no longer comparable to voluntary fraternal orders or partnerships; that they are sui generis, and approximate corporations in their methods of operation and powers.” Oil Workers International Union v. Superior Court of Contra Costa County, 103 Cal. App. (2d), 512, 570, 571, 230 P. (2d), 71.
It is also interesting to note that the Ohio General Assembly in 1955 enacted laws which permit unincorporated associations to be sued as entities in civil actions. (Section 1745.01, Revised Code.)
The responsibility of union officials also has been well stated, as follows, by the Court of Appeals of California:
“* * * The duly constituted officers and committees of the union, clothed with general authority to conduct the strike * * * cannot in good conscience, with knowledge of the restraining order and its provisions and early advice thereon by their attorney, withhold from the members, particularly those assigned to picket duty, adequate information concerning acts enjoined by the restraining order. Those members were not acting merely on their own. They were acting for the union as an organization and would quite naturally look to their captains for guidance as well as for station assignments.” Oil Workers International Union v. Superior Court of Contra Costa County, supra, 557.
*86 The defendants in the instant case attempt to excuse their conduct because of the alleged compliance and connivance of the sheriff and because of the resultant alleged “ prearrangement. ” Assuming, strictly in arguendo, the fact of such prearrangement, we are not convinced that such a conspiracy to subvert the execution of lawful process should have the effect of excusing the conspirators. On the contrary, we are convinced that such an admission simply acts to substantiate the transgression. In re Sylvester, 41 F. (2d), 231. Defendants are not charged with “contempt of the sheriff” but with contempt of the court. It would hardly seem necessary to point out that the sheriff acts simply as the executive arm of the court in the carrying out of court business, and that he has no authority beyond that conferred upon him by statute and by the court. It is self-evident, therefore, that defendants’ attempt to justify their conduct because of the alleged misfeasance of the court’s officer is wholly without merit. It may be added that, if the sheriff involved herein were actually a party to such conspiracy, he not only would be guilty of gross misfeasance of duty but he himself would be guilty of contempt of court. See Section 2705.02 (B), Revised Code, supra; 6 R. C. L., 495, Section 8; In re Athins, U. S. Marshal, 5 Alaska, 24; Cordts v. Reuter, 223 Wis., 518, 271 N. W., 39.
We turn briefly now to the question of the nature of.the duty of a sheriff in executing a writ of replevin.
Section 2737.03, Revised Code, provides:
“The order for the delivery of personal property * * * shall be addressed and delivered to the sheriff * # * the sheriff thereby shall be commanded to take the property * * (Emphasis added.)
The argument made by defendants is that a “paper” taking of the property to be replevied is all the statute requires. Defendants state that they would have “permitted” the sheriff to go into the Olin-Mathieson plant for the purpose of placing court seals upon the goods to be replevied and that, in fact, they advised the sheriff that he might go into the plant for that purpose. The Court of Appeals agreed that such was the extent of the sheriff’s duty. We are of a contrary opinion. We think the word, “take,” in the statute contemplates that the *87 sheriff shall take physical possession of the goods. Nowhere in the statutes does it appear that a constructive or fictional “taking” was intended. The section quoted and other, statutes dealing with replevin refer to “delivery” and subsequently to “redelivery” of the replevied property. No sound reason has been advanced as to why we should now give an artificial meaning to such clear and unequivocal terms. The very purpose of a writ of replevin is to effect a delivery of the property to the plaintiff. Section 2737.03, Revised Code.
We fail to see that the duties of a sheriff in executing a writ of replevin differ materially from his duties in executing general writs of attachment. In the latter instance, it is settled that no such attachment exists, in the ordinary case, until the officer effecting the attachment of personal property takes such property into his custody. Root v. Railroad Co., 45 Ohio St., 222, 12 N. E., 812.
It follows that the ordinary writ of replevin requires the sheriff to take actual physical possession of the property. However, in very special instances, where the property to be rep-levied is of such a nature as to make a physical taking impracticable, a constructive taking of possession by the placing of court seals or other securing devices upon the property by a court officer may be sufficient. We point out, however, that situations in which the latter procedure may be resorted to rest in the discretion of the court issuing the writ. But in any event, the nature of the duty of the court’s officer is not to be determined by the parties to the writ, much less by third parties, such as the defendants herein.
In addition, defendants contend that, since the writ of replevin herein was directed to other parties and because defendants were mere strangers to the writ and to the prior replevin actions, and because they allege that they had no actual knowledge of the contents of the writ, they cannot be guilty of contempt for acts relative to such writ or order. Such contention is not well taken. Of course it is the rule that where one is charged with disobedience of a writ or other order of a court such person must, in order to be guilty of contempt, have notice of such order either actual or by service of the same upon him. The nature of the charge in the case at bar, however, is not one *88 for disobedience of a court order but for resistance to and interference with the execution of process. As previously observed, the defendants 'herein did in fact have actual knowledge of the writ and of its nature. But be that as it may, where the act of contempt is of the character as herein described, such notice or knowledge is not prerequisite to a finding of contempt. If such contemnors have knowledge of or if they are chargeable with knowledge of the identity of a court’s officer and such officer is in the act of discharging or attempting to discharge lawful court business, that is sufficient notice to such parties. Such persons are then charged Avith the knowledge that resistance or other interference with such officer in the execution of his lawful duties is punishable as an act of contempt of court. See of Van Buren County, 147 Iowa, 663, 126 N. W., 791, Ann. Cas. 1913 D, 378.
It would hardly seem necessary to point out that persons are presumed to intend the reasonable, natural and probable consequences of their acts, and that the intent to commit a contempt may be deduced from the circumstances attending the act. That the defendants herein intended to prevent the sheriff from executing his duties is clearly revealed by the record in this cause.
Finally, it is argued by defendants that, because they were initially charged with violation of a criminal statute (Section 2917.07, Revised Code) and because the Grand Jury refused to indict them upon such criminal charge, a subsequent charge of contempt of court based upon the same unlawful acts cannot stand. Again, the argument is untenable. It is a well settled rule that the fact that an act of contempt may also be punishable as a distinct offense does not in any way prevent a court from punishing a person guilty of such an act for contempt. Hale v. State, supra.
In summary, the record herein clearly reveals that substantial evidence exists as to each defendant’s participation in the acts of contempt here in question. Interference with a court’s officer in his attempt to discharge lawful court orders constitutes grave contemptuous behavior which may be punishable as direct contempt of court since such interference com *89 stitutes conduct in the constructive presence of the court.
Union officials knowing or chargeable with the knowledge of the identity of such court officer and of the nature of his business have imposed upon them a legal duty to communicate such knowledge to the union members who because of a labor dispute are or may be in a position to interfere with the court’s officer in the proper discharge of his duties. Furthermore, such union officials must exercise reasonable effort to see to it that a court’s officer is undisturbed by the acts of the union members in the officer’s attempt to discharge lawful court business. Union officials failing in these duties may subject themselves and their unions to legal responsibility for the contemptuous acts of union members who are guilty of such interference.
The inherent power of a court to punish for contempt may not be limited by legislative authority nor does such power depend upon express constitutional grant. Moreover, courts, in their sound discretion, have the power to determine the kind and character of conduct which constitutes direct contempt. A court in imposing punishment for an act which it characterizes as one of direct contempt of court is not limited by the Legislature and may impose a penalty reasonably commensurate with the gravity of the offense. In this respect, we approve of the standards as set forth, as follows, by the late Chief Justice Yin-son of the Supreme Court of the United States:
“# # * In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court’s order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant’s defiance as required by the public interest, and the importance of deter ring-such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge.” United States v. United Mine Workers of America, supra, 303.
If courts are to be maintained and if they are to function properly in carrying out their constitutional and statutory duties, the defiance of court authority, as exemplified by the misconduct in the present case, cannot be tolerated. Courts must vigorously protect the dignity of their judgments, orders, and *90 process. . All those who would by misconduct obstruct the administration of justice must be on notice that they do so at their peril.
The judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.

Judgment reversed.

Weygandt, C. J., Zimmerman, Herbert and O’Neill, JJ,, concur.