Marshall, C. J.
 

 The argument is advanced on behalf of the respondents, that, inasmuch as Ralph
 
 *531
 
 Miller was not at the time of the alleged conspiracy an officer of the court, any acts of the respondents in conspiracy with him would not constitute a legal contempt. It is pointed out that the Legislature has defined contempt in Section 12137, General Code. Without reciting the provisions of that section, it is sufficient to say that they relate to disobedience of and resistance to process, misbehavior of court officers in the performance of official duties, failure of witnesses to obey subpoenas, the rescue or attempted rescue of persons or property in the custody of an officer by virtue of process, and the failure of persons recognized to appear as witnesses in compliance with the terms of a recognizance. It may be answered that the language of that statute is not exclusive, and the Legislature has not in terms placed any limitation upon the court to extend and expand the legislative rule to other acts either of similar or dissimilar nature. It is plain that the statute does not either expressly or by implication penalize the acts described in these several informations. The Legislature may not have anticipated or foreseen such occurrences, or it may have intended to leave it to the court to protect and defend its own dignity and to determine what acts and offenses amount to a transgression against its dignity, and further to determine what penalty should be imposed upon such transgressors. The accepted doctrine is that statutes pertaining to contempt of court merely regulate the power of the court to punish for contempt, instead of creating the power. The fact that no precedent is found among the.reported cases is unfortunate, but not important. The fact that this task has never confronted any other court- does
 
 *532
 
 not relieve this court of the duty of meeting its present task. Only a few centuries ago there were no judicial precedents establishing or applying any legal principles, and even yet, with all the wealth of judicial precedents available at this time, courts are frequently called upon to apply principles to unprecedented and unparalleled facts, and occasionally overrule and override well-established precedents.
 

 It follows that everything that can be done with precedents can be done without them. We need not seek a parallel case or a persuasive precedent. Principles governing and controlling this case are old and well established and not difficult of application. The most familiar forms of contempt of court are found in acts which hinder and delay and obstruct .the administration of justice. Such acts are usually committed in the course of the adjudication of some cause or the execution of its judgment. The informations in the instant cases are not of that character. They are classed with the less familiar forms found in acts which tend to bring the court into disrespect or disrepute, or which subject it to ridicule, or which offend against its dignity, affront its majesty, or challenge its authority. The acts alleged in the instant cases were not committed in the course of pending litigation and have not resulted in injustice to any litigant in any cause. The purpose in bringing the defendants before the court is to vindicate the dignity and preserve the authority of the court. The judgments of courts are rarely executed by physical force. Such measures are not necessary. A defeated litigant accepts the result without question and abides by the decree without thought of resistance. This is only so because of
 
 *533
 
 confidence in the integrity of the court and its officers. A court does not operate automatically or perform its functions unaided. Attorneys and counselors are sworn officers of the court, so constituted by statute and defined by the common law as “ministers of justice in aid of the court.” They are firmly established as indispensable units in our judicial system, without whose aid-the courts could not successfully function.
 

 The relation between court , and counsel is such that the court is required to repose almost unlimited confidence in counsel; Because of this close relation, and the necessity for honest and trustworthy attorneys and counselors, the Legislature has given to them an official status, and has provided in Section 1698, General Code, that no one shall be permitted to practice as such unless admitted to the bar by order of the Supreme Court, or of two judges thereof. The same statute provides for examinations and empowers the Supreme Court to prescribe and publish rules to govern the same. Section 1698-1, General Code, declares it to be a misdemeanor for one not so licensed to represent himself as authorized to practice in this state; Sections 1700 and 1701 establish certain requirements as to moral character, education, citizenship, and other qualifications. These legislative requirements recognize the demands of special skill and special confidence, but were not intended to, nor do they, • in fact, abolish the inherent power of the court to impose additional requirements governing admissions to practice, and rules have in fact been prescribed and published by this court which go far beyond the statutory requirements. Among other requirements, the
 
 *534
 
 court has prescribed and published rules requiring registration of students in the office of the clerk of the court, and credit for study of legal subjects is not given until after such registration. Students of the law are thereby given a semi-official status by the fact of such registration. All such requirements and qualifications, and all such precautions and safeguards, would be without meaning except upon the theory of the necessity of selecting persons of good moral character and worthy of the confidences of the courts and litigants.
 

 If it is important that the court select attorneys of good moral character, it is equally important that the processes of selection be executed in an honorable manner, and that they be not defeated or frustrated by fraudulent means. If attorneys of integrity are essential to the orderly work of the courts, the act of selecting attorneys is as important in the administration of justice as those judicial acts whereby principles are declared and causes decided.
 

 If persons of ill repute, and lacking honesty and integrity, can gain admission to the bar, the good repute of the bench and bar will suffer, the courts will lose the confidence of litigants, and their usefulness will be destroyed. To corrupt the agencies whereby judicial processes are executed is to poison the fountain of justice by contaminating its source.
 

 Unless the purity of the processes of selecting attorneys can be preserved, the usefulness, if not the very existence, of the court is threatened.
 

 The acts described in. these informations, and the proof in support of them, show a direct fraud upon the court, and, if the court is not able to punish the
 
 *535
 
 moral delinquencies of the guilty parties, then it has no means of vindicating its dignity.
 

 The United States Supreme Court, at an early date, in
 
 Ex parte Robinson,
 
 86 U. S. (16 Wall.), 505, 22 L. Ed., 205, declared the inherent power of courts to punish for contempt. In
 
 Hale
 
 v.
 
 State,
 
 55 Ohio St., 210, 45 N. E., 199, 36 L. R. A., 254, 60 Am. St. Rep., 691, it was declared that:
 

 “The General Assembly is without authority to abridge the power of a court created by the Con-, stitution to punish contempts summarily, such power being inherent and necessary to the exercise of judicial functions. ’ ’
 

 If the court has the inherent power to summarily punish contempts, it must by the same token have the power to determine the kind and character of conduct which will constitute contempt.
 

 It has been urged that Ralph Miller had no official connection with the clerk’s office and that he was, therefore, without power to carry out his part of the conspiracy. The testimony shows, however, that he was able in two instances to execute his part of the compact through the instrumentality of his brother who did hold an official position. Fraud perpetrated upon the court by an officer is no different in its results from fraud perpetrated by one not an officer, and the resulting contempt is not less culpable because it only succeeded in part. A long line of cases in other jurisdictions holds that fraud practiced upon a court in the procurement of a certificate of admission is ground for disbarment and revocation of the certificate.
 

 Will it be held that the guilt consists only in being discovered and that unsuccessful attempts at fraud
 
 *536
 
 are excusable? Such a rule would operate as an encouragement to such efforts.
 

 All defendants will be adjudged guilty.
 

 Finding of guilty.
 

 Day, Allen and Matthias, JJ., concur.
 

 Robinson and Jones, Jj., concur in the syllabus and the findings of guilty, except as to the respondent John B. Canfield.
 

 Kinkade, J., not participating.