STATE of Ohio, Appellee,

v.

EVANS, Appellant.

[Cite as *State v. Evans* (1994), 93 Ohio App.3d 121.]

Court of Appeals of Ohio,
Summit County.

No. 16323.

Decided Feb. 9, 1994.

*Lynn Slaby*, Summit County Prosecuting Attorney, and *Philip Bogdanoff*, Assistant Prosecuting Attorney, for appellee.

*Patricia Millhoff*, for appellant.

BAIRD, Judge.

This cause was heard upon the appeal of Fae Amanda Evans from her conviction in the Summit County Court of Common Pleas on one count of involuntary manslaughter (R.C. 2903.04[A]) and one count of child endangering (R.C. 2919.22[A]), with a physical harm specification (R.C. 2941.143). We affirm.

On Monday, January 18, 1993, at approximately 11:45 a.m., three-year-old Sheila Marie Evans was brought by Akron paramedics to Children's Hospital. Sheila was not breathing and did not have a pulse. The emergency room physician noted that the child had a distended stomach and an apparent abdominal injury, many bruises over her torso, and a dilated rectum. After the doctors obtained a pulse, Sheila was taken to surgery. The surgeon discovered that

Sheila suffered from a severe abdominal injury and perintinitis and that part of her intestine was perforated and gangrenous. Although the surgeon removed part of the damaged intestine, Sheila died later that evening from a "severe blunt force trauma" to the abdomen.

The coroner's report revealed that Sheila had suffered a severe injury to her abdomen approximately forty-eight to seventy-two hours before being brought to the hospital, or sometime on Friday or Saturday. These injuries caused the blood supply to the child's intestinal tract to be interrupted, and the bowel and intestinal tract began to die. The coroner indicated that, between the time of the injury and the time Sheila was brought to the hospital, she would have suffered from increasing pain, a high temperature, vomiting, diarrhea, and a distended, bloated stomach. The coroner also opined that the child would not be eating and would not be moving around very much because of the pain in her stomach.

The coroner also documented over one hundred and twenty-five bruises which had occurred within a few hours before the child was brought to the hospital. The coroner testified that there was evidence that the child had been beaten about the head and upper torso and had been anally penetrated, most probably by a man's penis, during this same period of time. There was also evidence that Sheila had suffered numerous anal penetrations over a longer period of time.

Police reports revealed that Fae Amanda Evans and her boyfriend, Ronald Phillips, had been home with Sheila and Evans' two other children all weekend, except for a period of a few minutes on Sunday evening when Evans visited with relatives down the street. On Monday morning, Evans took her youngest child to a routine doctor's appointment, and was away from home from approximately 10:15 a.m. to 11:20 a.m. Upon returning, she asked Phillips to call to the other two children and, when only one appeared, Phillips went to look for Sheila. He found her blue and lifeless, took her downstairs to his grandmother's apartment, and his grandmother called for help.

After Sheila's death, Evans was arrested on charges of child endangering, with a physical harm specification, involuntary manslaughter, and rape. The rape charge was dropped, and Evans was not indicted for rape. Phillips was indicted on one count of aggravated murder, with a death specification, three counts of rape, one count of felonious sexual penetration, one count of felonious assault, and one count of child endangering, with a physical harm specification.

Separate trials were ordered for the co-defendants. Evans moved for a change of venue because of the extensive media coverage of Sheila's death in the Akron area. This motion was denied. Following a trial to a jury, Evans was found guilty of the charges and was sentenced to thirteen to thirty years' imprisonment.

It is from this judgment that Evans now appeals, asserting four assignments of error.

### Assignment of Error I

"The court erred in reviewing the confession of Ronald Phillips, Fae Evans['] co-defendant, and various police reports and utilizing same in sentence."

Before sentencing appellant, the trial court requested and received from the prosecutor copies of various police reports containing the statements of Ronald Phillips, as well as a copy of his handwritten confession. The court stated that, as a result of the extensive media coverage of the crime, it was aware of Phillips' statements and, "rather than depend on rumor or innuendo," the court wanted to review the statements and give them "whatever weight may or may not be appropriate." Appellant argues that this was improper, as Phillips had not been a witness at trial and the statements were not subject to cross-examination. While it is unclear from appellant's brief what Phillips' statements contained, appellant's counsel explained at oral argument that Phillips had implicated appellant in at least one count of rape, alleging that appellant had restrained the child while Phillips raped her.

We first note that it is appellant's duty to ensure that all parts of the record necessary for determination of the appeal are before this court and that the record is properly preserved for review. *State v. Drippon* (Sept. 29, 1993), Medina App. No. 2222, unreported, at 4, 1993 WL 379062, quoting *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 19, 520 N.E.2d 564, 565–566. In order for this court to properly review the statements reviewed by the trial court prior to appellant's sentencing and determine whether prejudice to appellant resulted, we must necessarily be apprised of the contents of those statements. As appellant failed to proffer the documents complained of or otherwise preserve the record for appeal, we cannot now address the propriety of the trial court's review of those documents.

Even assuming that the record had been properly preserved, we cannot find that appellant was prejudiced by the trial court's review of the documents. The most serious of Phillips' accusations regarding appellant's involvement in the rape are contained in other parts of the record of this case. Although appellant was not indicted for rape, her arrest warrant and the report of her arrest charged her with rape. The affidavit of indigency filed by the appellant also indicated that she was charged with rape. All of these documents were in the record before the trial court, putting the court on notice that there was at least some allegation of appellant's involvement in the rape of her child. The trial court was also, necessarily, on notice that appellant was not indicted for rape and that, apparently, there was insufficient evidence to go forward on that charge.

More importantly, however, appellant's own motion for change of venue included copies of all of the local newspaper accounts of the crime, arrest, and indictment of appellant and Phillips. These accounts specifically report that Phillips confessed and, at the same time, accused appellant of holding Sheila down while he raped her. As these are reports of the same statements of which appellant now complains and as they were already before the trial court prior to the trial and sentencing of the appellant, we cannot say that the appellant could be prejudiced by the court's review of Phillips' actual statements.

Appellant's first assignment of error is overruled.

### Assignment of Error II

"The trial court erred in failing to grant defendant-appellant[']s motion for a presentence investigation prior to the imposition of sentence."

Appellant claims that the trial court erred in not ordering that a presentence investigation be conducted. Crim.R. 32.2(A) states:

"In felony cases the court shall, and in misdemeanor cases may, order a presentence investigation and report before granting probation."

This rule clearly provides that a presentence investigation is required only when a trial court actually sentences the defendant to probation. *State v. Henry* (1987), 37 Ohio App.3d 3, 10, 523 N.E.2d 877, 884–885; *State v. Dawson* (Dec. 4, 1991), Summit App. No. 15054, unreported, at 5, 1991 WL 259531. As the appellant was not sentenced to probation, the trial court was not required to order a presentence investigation. Appellant's second assignment of error is not well taken.

### Assignments of Error III and IV

"III. The jury verdicts finding Fae Amanda Evans guilty of involuntary manslaughter and child endangering were based upon insufficient evidence. Thus, her convictions were in violation of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

"IV. Fae Evans's convictions on three counts of felonious assault [*sic*] are contrary to the manifest weight of the evidence. Thus, her convictions were in violation of Article I, 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

Both assignments of error require that this court review the evidence presented at trial and they will, therefore, be addressed together.

In reviewing the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

■ In determining whether a conviction is against the manifest weight of the evidence, this court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id.* See, also, *State v. Rountree* (July 1, 1992), Summit App. No. 15388, unreported, at 2, 1992 WL 154083.

■ Appellant was convicted of involuntary manslaughter, pursuant to R.C. 2903.04(A), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony." The underlying felony supporting the conviction was child endangering. R.C. 2919.22(A). The endangering children statute provides that no parent shall create a substantial risk to the health or safety of her child. *Id.* In order to be convicted of child endangering, a person must act "recklessly" or with "heedless indifference to the consequences" of her actions. R.C. 2901.22(C). This court has recently upheld convictions under this statute, where a parent did not seek medical attention for his or her child. *State v. Legg* (1993), 89 Ohio App.3d 184, 623 N.E.2d 1263; *State v. Sandefur* (Aug. 11, 1993), Summit App. No. 15787, unreported, 1993 WL 303279.

■ Appellant argues that the evidence did not show that appellant had the requisite intent to commit child endangering and that, therefore, it was error to convict her of either crime. Appellant argues that there was no evidence that she knew that her child was in danger of death following the first beating or that, with such knowledge, she failed to assist her child. Appellant claims that there was only evidence that Sheila had displayed flu-like symptoms, including vomiting and diarrhea, and that knowledge of these symptoms did not place appellant on notice of the severity of Sheila's injury. We disagree.

After reviewing the evidence, we conclude that the convictions were based upon sufficient evidence and were not against the manifest weight of the evidence. In addition to testimony of the flu-like symptoms upon which appellant relies, there was also evidence that Sheila would have been in extreme pain over the weekend,

she would have had trouble breathing and moving about, and would have been developing a distended stomach. Testimony of these added symptoms was enough for the jury to reasonably conclude that appellant knew that Sheila was in need of medical attention, as she was obviously suffering from more than a common flu.

Appellant's third and fourth assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and DICKINSON, J., concur.