COPLEY TOWNSHIP BOARD OF TRUSTEES et al., Appellees,

v.

W.J. HORVATH COMPANY et al., Appellants.

[Cite as *Copley Twp. Bd. of Trustees v. W.J. Horvath
Co.*, 193 Ohio App.3d 286, 2011-Ohio-1214.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25342.

Decided March 16, 2011.

Stephen J. Pruneski and Irving B. Sugerman, for appellees.

Darren W. Dehaven, for appellants.

DICKINSON, Presiding Judge.

## INTRODUCTION

{¶ 1} William Horvath operated W.J. Horvath Company, a mulch business in Copley Township. After some of the mulch ignited in 2001, the township sued Horvath and his company, alleging that they were in violation of the township's zoning resolution. It also sued his mother, Anna Horvath, because it alleged that she was an owner of the property where the mulch business was located. The action resulted in a permanent injunction against Mr. Horvath. Under the terms of the injunction, Mr. Horvath could continue operating his mulch business only if he fully complied with the township's zoning resolution and followed specific requirements for storing, monitoring, and maintaining the mulch. In December 2007, the township moved for an order to show cause, requesting that the trial court find Mr. Horvath in contempt for failing to comply with the permanent injunction. In March 2010, the court found Mr. Horvath in contempt and ordered him to cease all of his business operations. It enjoined each of the defendants from conducting any type of business on the property where the mulch business was operating and ordered Mr. Horvath to remove all of his equipment within 30 days. The Horvaths have appealed, arguing that the trial court violated Mr. Horvath's due process rights by not affording him a hearing before entering its ruling and that it exercised improper discretion when it punished them for the violations. We affirm in part because Mr. Horvath waived his right to additional hearings and the trial court exercised proper discretion when it imposed his punishment. We reverse in part because the trial court improperly punished Ms. Horvath.

## DUE PROCESS

{¶ 2} The Horvaths' first assignment of error is that the trial court incorrectly failed to afford Mr. Horvath a hearing. They argue that Mr. Horvath had a constitutional due process right to a hearing as well as a statutory right under R.C. 2705.05.

{¶ 3} " ' "It has long been the established law of the United States * * * that constitutional procedural due process requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." ' " *Taylor v. Hamlin–Scanlon*, 9th Dist. No. 23873, 2008-Ohio-1912, 2008 WL 1808366, at ¶ 15, quoting *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 334, 16 OBR 377, 475 N.E.2d

1284. R.C. 2705.05(A) also provides, "In all contempt proceedings, the court shall conduct a hearing."

{¶ 4} The township argues that Mr. Horvath received due process and waived any right that he might have had to additional hearings. It notes that on July 10, 2009, Mr. Horvath filed a "Motion for Order," requesting "an Order consistent with the Proposed Orders" prepared by the parties' lawyers. In that motion, Mr. Horvath acknowledged that the trial court "has inspected the property in the presence of all parties and has previously heard arguments from all parties." The township also notes that the proposed order that Mr. Horvath asked the court to adopt would have "found [him] to be in contempt of the Court's Permanent Injunction dated December 19, 2001."

{¶ 5} The trial court held a hearing on the township's motion for an order to show cause on September 30, 2008. According to the order setting that hearing, if the Horvaths "are not in compliance with this Court's previously agreed order regarding the clean up of their property, the Court shall proceed with the hearing as to why they shall not be held in contempt of this Court's prior order." There is no journal entry continuing the hearing. The next item in the record is an order dated October 24, 2008, that schedules a telephone status conference for November 4, 2008. That order states, "Prior to the status conference, [the township's] counsel shall draft and circulate * * * a proposed order of settlement in this case." The fact that the court was aware in October that the parties were contemplating settlement of the case suggests that the September hearing occurred.

{¶ 6} It also appears from the record that the trial court, at the request of Mr. Horvath, visited the mulch business with the parties' lawyers in attendance. The trial court therefore had the opportunity to view, firsthand, whether Mr. Horvath's business was in compliance with the permanent injunction.

{¶ 7} We do not know what occurred at the September 30, 2008 hearing or what the trial judge saw during the site visit. It was, however, Mr. Horvath's "duty to ensure that all parts of the record necessary for determination of the appeal [were] before this court and that the record [was] properly preserved for review." *State v. Evans* (1994), 93 Ohio App.3d 121, 124, 637 N.E.2d 969. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Labs.* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. Accordingly, we will presume that, between the September 30, 2008, hearing and the site visit, Mr. Horvath had "a reasonable opportunity to meet [the allegations against him] by way of defense or explanation, [was] * * * represented by counsel, and ha[d] a chance to testify

and call other witnesses in his behalf, either by way of defense or explanation." *In re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682.

■■■ {¶ 8} Even if the trial court did not hold a full hearing on the contempt motion, we conclude that Mr. Horvath waived his right to additional hearings on the motion. "A party can be held to waive his fundamental constitutional rights only if [he] does so knowingly, intelligently, and voluntarily." *Pirtle v. Pirtle* (July 20, 2001), 2d Dist. No. 18613, 2001 WL 815008 at *4. As the township notes, Mr. Horvath filed a motion asking the court to enter an order finding him in contempt based on its visit to his mulch business and the arguments it had already heard from the parties. Mr. Horvath specifically asked the court "to adopt [his] proposed Order or such other Order as the Court determines to be appropriate based on the proposed Orders attached." Having asked the court to rule on the township's motion without further evidence, Mr. Horvath waived his right to additional hearings on the matter. Mr. Horvath's first assignment of error is overruled.

## SEVERITY OF PUNISHMENT

■■■ {¶ 9} The Horvaths' second assignment of error is that the trial court incorrectly imposed punishment that was not commensurate with the gravity of Mr. Horvath's offense. According to them, the reason Mr. Horvath was accused of being in violation of the injunction was that "the condition[ ] [of] the Property [was] in disrepair and * * * numerous vehicles, trailers, scrap metal, junk, debris, and trash [were] stored on the property." The trial court, however, permanently enjoined him from operating any type of business on the property. The Horvaths argue that life sentences should be reserved for only the most despicable crimes. They also argue that the court improperly permanently enjoined Ms. Horvath from operating a business on the property, even though it was Mr. Horvath who was found in contempt.

■■■ {¶ 10} R.C. 2705.05(A) prescribes sanctions for contempt violations, but courts are not required to follow it. The Ohio Supreme Court has held, "Although * * * the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 207, 64 O.O.2d 129, 299 N.E.2d 686. Courts have "wide discretion to determine the punishment for contempt of [their] own orders." *State ex rel. Anderson v. Indus. Comm.* (1984), 9 Ohio St.3d 170, 172, 9 OBR 456, 459 N.E.2d 548; see also *State v. Kilbane* (1980), 61 Ohio St.2d 201, 207, 15 O.O.3d 221, 400 N.E.2d 386 (concluding that, in light of the surrounding circumstances, the trial court exercised proper discretion when it determined an appropriate contempt sanction).

{¶ 11} The township filed a complaint against Mr. Horvath, Anna Horvath, and W.J. Horvath Company after it allegedly spent more than 600 hours monitoring and fighting numerous fires at Mr. Horvath's business. According to the township, the fires threatened the general health, welfare, and safety of its citizens. The action resulted in a permanent injunction against Mr. Horvath, providing that he could continue operating his mulch business only if he was "in full compliance with the Copley Township Zoning Resolution, the applicable fire codes, and the terms and conditions of this Permanent Injunction." The other terms of the injunction included details about how Mr. Horvath stored his mulch and rail timbers, how he monitored the temperature of the mulch piles, and how often he had to turn the company's bulk and shredded materials.

{¶ 12} In its motion for an order to show cause, the township alleged that Mr. Horvath had "failed and refused to comply with the terms and conditions of the Permanent Injunction." In a memorandum it submitted in support of its motion, the township alleged that conditions at the mulch business "have become increasingly worse" and that Mr. Horvath "has not even attempted to comply" with the injunctions' requirements regarding mulch and timber storage, monitoring, and maintenance. "To compound matters, [he] has brought numerous trucks, trailers, and other vehicles, scrap metal, junk, trash, and debris onto the property, creating even more violations." The township asked the court to fine Mr. Horvath, imprison him for 30 days, allow it to remove anything from his property that violated the zoning resolution, and permanently enjoin him from operating his mulch business.

{¶ 13} After the Horvaths filed their "Motion for Order," the township filed a response, detailing Mr. Horvath's record of noncompliance with the injunction. It noted the excuses that Mr. Horvath had offered over the years for his noncompliance, such as "lack of help, his mother's health, the persons who own the grinders, the weather, the Township itself, the school next door, the economy and his competitors." It noted that in addition to his mulch business, Mr. Horvath was attempting to operate a dump on the property and intended to open a landscaping business in the future. It argued that Mr. Horvath had never taken responsibility for his conduct and that he "has a systemic inability to operate the mulch business, or any other business on the Property."

{¶ 14} The trial court found that Mr. Horvath "has been afforded numerous opportunities to comply with the Permanent Injunction * * * and that he has willfully failed and refused to do so." It also found that Mr. Horvath "is simply unable or unwilling to operate any kind of business pursuant to the Copley Township Zoning Resolution and the Permanent Injunction." It concluded that it had "no other alternative but to order that all business operations of whatever kind cease and desist immediately."

{¶ 15} As noted earlier, although it was the Horvaths' idea for the trial court to inspect the mulch business, they failed to preserve a record of what the court saw during its visit. We therefore must presume it saw evidence that in addition to his mulch business, Mr. Horvath was improperly operating other businesses on the property. The court was also entitled to consider Mr. Horvath's history of noncompliance with the township's zoning resolution when determining whether he would be willing and able to operate any type of business in accordance with the law. We conclude that, in light of Mr. Horvath's history of noncompliance, he has not established that the trial court improperly exercised its discretion when it permanently enjoined him and his company from operating any business on the property where he operated the mulch business.

{¶ 16} Regarding Ms. Horvath, the Ohio Supreme Court has recognized that under certain circumstances, nonparties to an injunction may still be bound by it. *Planned Parenthood Assn. of Cincinnati Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 61, 556 N.E.2d 157. Whether others are also bound "depends upon whether they are 'persons in active concert or participation with [the parties to the action].'" Id., quoting Civ.R. 65(D). "Nonparties are bound by an injunction to ensure 'that defendants [do] not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" Id., quoting *Regal Knitwear Co. v. NLRB* (1945), 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661. "The determination of breadth must be made on the facts of each case." Id. "Persons acting in concert or participation with a party against whom an injunction has been issued must have actual notice of the injunction in order to be bound by it." Id.

{¶ 17} Even if Ms. Horvath was bound by the injunction, the township did not allege, let alone prove, that she violated it. The township's motion for an order to show cause requested only that Mr. Horvath be found in contempt. In its response to Mr. Horvath's motion for an order, the township, again, asked only for Mr. Horvath to be found in contempt. Furthermore, in its judgment, the trial court only found Mr. Horvath in contempt. The township has not cited, and this court has been unable to locate, any authority for the idea that a court may sanction a person who has not violated an injunction. To the contrary, in *Freeman v. Freeman*, 9th Dist. No. 07CA0036, 2007-Ohio-6400, 2007 WL 4225425, we held, "Without a finding and order of contempt, [a] [m]agistrate [is] without authority to impose sanctions." Id. at ¶ 46.

{¶ 18} The township concedes in its brief that Ms. Horvath is an "elderly woman with significant health problems who resides in a nursing home and who had no involvement with [Mr. Horvath's] business." Accordingly, we conclude that the trial court improperly exercised its discretion when it prohibited Ms. Horvath "from conducting any type of business operations in, on, and from" her

property. Until she is found to have violated the permanent injunction, sanctions against her are not appropriate. The Horvaths' second assignment of error is overruled in part and sustained in part.

## CONCLUSION

{¶ 19} The trial court did not violate Mr. Horvath's due process rights, and it exercised proper discretion when it punished him for violating a permanent injunction. The court incorrectly sanctioned Ms. Horvath because it did not find that she violated the injunction. The judgment of the Summit County Common Pleas Court is affirmed in part and reversed in part.

Judgment affirmed in part
and reversed in part.

MOORE, J., concurs.

CARR, J., dissents.

CARR, Judge, dissenting.

{¶ 20} I respectfully dissent. I would sustain appellant's assignment of error because the injunction issued as a consequence of appellant's contempt is overly broad and unreasonable.

{¶ 21} Appellant argues on appeal that the injunction was unreasonable because it prohibited him from operating any business on the property. I agree. The township complaint sought to enjoin appellant from operating a mulch business in violation of the zoning code. A mutually agreed upon injunction placed specific restraints on how appellant operated his mulch business. "Equity requires that an injunction should be narrowly tailored to prohibit only the complained of activities." *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 224, 626 N.E.2d 59. The terms of the injunction were properly narrowly tailored to address appellee's concerns, and appellant had notice of what activities were proscribed. He admitted that he had violated the terms of the injunction and does not contest that he is guilty of contempt. However, the trial court imposed an injunction to remedy his contemptuous behavior beyond the scope of the original injunction that far exceeded the restraints placed on appellant's mulch business.

{¶ 22} I agree with the majority that the court has both statutory and inherent authority to punish parties for disobedience of court orders. *Malson v. Berger*, 9th Dist. No. 22800, 2005-Ohio-6987, 2005 WL 3556411, at ¶ 7, citing *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 194, 9 OBR 505, 459 N.E.2d 870. I do not agree, however, with the majority's assertion that a trial court has broad

discretion to determine the punishment for contempt under all circumstances. That broad discretion has been recognized in cases of direct contempt. See, e.g., *State v. Local Union 5760, United Steelworkers of Am.* (1961), 172 Ohio St. 75, 15 O.O.2d 133, 173 N.E.2d 331, at paragraph four of the syllabus; *State v. Dean,* 2d Dist. Nos.2006CA61, 2006CA63, 2007-Ohio-1031, 2007 WL 706799, at ¶ 14; Trial Handbook for Ohio Law, Punishment, Section 5:7 ("Except in the case of direct contempt of court which is punishable within the discretion of the court, contempts are punishable as prescribed by statute"). In fact, one of the two cases cited by the majority for the proposition that the trial court has broad discretion to fashion punishments for contempt involves direct contempt of court. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 15 O.O.3d 221, 400 N.E.2d 386. Although appellate courts have expanded the holding in *Local Union 5760* to situations of indirect contempt, they do so without any analytical nexus. See, e.g., *Byron v. Byron,* 10th Dist. No. 03AP–819, 2004-Ohio-2143, 2004 WL 894600, at ¶ 14; *Olmsted Twp. v. Riolo* (1988), 49 Ohio App.3d 114, 116–117, 550 N.E.2d 507; *Moraine v. Steger Motors, Inc.* (1996), 111 Ohio App.3d 265, 269, 675 N.E.2d 1345. The other case, *State ex rel. Anderson v. Indus. Comm.* (1984), 9 Ohio St.3d 170, 9 OBR 456, 459 N.E.2d 548, is distinguishable, as it involves a second writ of mandamus and motion for contempt stemming from the Industrial Commission's alleged failure to comply with the order arising out of the initial writ of mandamus. In that case, the high court, without any citation to authority, expressly stated that the "court of appeals * * * has wide discretion to determine the punishment for contempt of its own orders." Id. at 172. Given the unique circumstances present in *Anderson,* I would not extend this broad stroke of authority to determine punishment for cases of indirect contempt before the trial court.

{¶ 23} Although the majority also quotes *Cincinnati v. Cincinnati Dist. Council 51* (1973), 35 Ohio St.2d 197, 207, 64 O.O.2d 129, 299 N.E.2d 686, in support of its assertion that the trial court is not limited to the imposition of statutory penalties upon a finding of contempt, the statement constitutes dicta by the Ohio Supreme Court. The issue of whether a trial court may impose penalties in excess of the statutory penalties was not properly before the high court for consideration because that court determined that the fine imposed was within the limits of R.C. 2705.05. Id. The Ohio Supreme Court continued, in dicta, "It is, however, *highly doubtful* that the General Assembly may properly limit the power of court to punish for contempt." (Emphasis added.) Id. The high court's following statement that "the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control" is derived from its prior holding in *Local Union 5760,* which concerned direct contempt. *Cincinnati Dist. Council 51,* 35 Ohio St.2d at 207.

{¶ 24} The distinction between direct and indirect contempt is significant. See Baldwin's Ohio Practice Criminal Law (2010), Section 62.15. While it is well established that a court has broad discretion to craft a punishment commensurate with a contemnor's conduct in cases of direct contempt, the legislature has properly established limits on the punishments that may be imposed in cases of indirect contempt.

> Contempts are not governed by common law, but by the state constitution and statutes. If a court derives its powers from a constitution, the court's power to punish for contempt cannot be taken away by the legislature. Thus, the power to punish for contempt is inherent to the courts, and it goes beyond the power given to judges by statute.
>
> The circumstance that the court has inherent power to punish contempt does not mean the legislature is powerless to enact statutes regulating contempt procedures or punishment. The legislature may establish alternative procedures and penalties that do not unduly restrict or abrogate the courts' contempt powers. The legislature may set forth or limit by statute sanctions to be used by the courts in punishing contempt, but it may not eliminate the ability of circuit courts to apply the inherent power of civil or criminal contempt. It may impose reasonable limits on the contempt-punishing powers of even those courts created by the state's constitution. Thus, it is generally recognized that the legislature may regulate the practice in contempt proceedings. Any legislative enactment that purports to do away with the inherent power of contempt directly affects the separate and distinct function of the judicial branch and violates the separation of powers.

17 Am.Jur.2d Contempt, Section 30. This is in line with Ohio Supreme Court precedent that states that "[t]he accepted doctrine is that statutes pertaining to contempt of court merely regulate the power of the court to punish for contempt, instead of creating the power." *State ex rel. Turner v. Albin* (1928), 118 Ohio St. 527, 531, 161 N.E. 792.

{¶ 25} The majority further does not discuss whether the contempt in this case is civil or criminal. The difference between the two depends on the character and purpose of the sanctions and has been discussed in numerous prior opinions. See, e.g., *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253–254, 18 O.O.3d 446, 416 N.E.2d 610; *Boston Hts. v. Cerny*, 9th Dist. No. 23331, 2007-Ohio-2886, 2007 WL 1695121, at ¶ 19–20. It is clear that while the sanctions imposed benefit appellee, they are not coercive so as to compel appellant's compliance but rather serve to punish appellant for his repeated disobedience. Whether the contempt here though is civil or criminal or both ultimately becomes irrelevant as the never-ending restriction on appellant's use of the property for any and all types of business is overly broad in that it is more than merely coercive and not narrowly tailored to effectuate the purpose of the injunction.

{¶ 26} Unlike the situation in *Cerny*, appellant here had no notice that the trial court might restrict his ability to operate any business on the property. The injunction addressed only the operation of a mulch business. The township's motion to show cause requested only the imposition of the following penalties for contempt: that appellant be enjoined from further violations of the zoning resolution, that the township be authorized to enter upon the premises to bring the property into compliance with the zoning resolution, that the township be authorized to assess the cost of its compliance measures as a lien upon the premises, that appellant be fined and imprisoned, and that appellant pay the attorney fees and expenses incurred by the township's prosecution of the matter. The trial court's July 22, 2008 scheduling order notified appellant that he was "facing possible sanctions, including a fine, possible jail time, and an assessment of clean up costs in the event [he has] not completed the task by the [contempt] hearing date." Moreover, the township, after negotiations with appellant, proposed an order whereby appellant would be found in contempt and be subject to coercive, or last-chance-type, penalties. Only after appellee asserted that it was unable to reach a settlement with appellant did it propose, in apparent frustration, that the trial court proscribe all business activity on the property. Although frustration by the township and the court is understandable after numerous years of attempted resolution of the zoning violations and appellant's admitted contempt, the final order punishing appellant for his contempt far exceeds the scope and purpose of the injunction underlying this matter. Because appellant has admitted that he is guilty of contempt, sanctions are obviously in order, but as appellant asserts, the penalty here is simply overly broad. Accordingly, I would reverse and remand with instructions to impose contempt sanctions commensurate with the scope and purpose of the underlying injunction.