[Cite as *Beavers v. Lors*, 2023-Ohio-3940.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| LORNA BEAVERS, | CASE NO. 2022-L-122 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| ROBERT LORS, | |
| Defendant-Appellant. | Trial Court No. 2021 CV 00928 |

**O P I N I O N**

Decided: October 30, 2023
Judgment: Affirmed

*Jeffrey H. Black*, Murray & Black LTD LPA, 38109 Euclid Avenue, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Matthew A. Craig*, 4202 Portside Drive, Vermilion, OH 44089 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Robert Lors, appeals the judgment finding him in contempt. We affirm.

{¶2} The parties are neighbors with adjoining properties. In 2021, appellee, Lorna Beavers, filed a complaint in the trial court seeking a declaratory judgment to quiet title, alleging that she had acquired ownership of a portion of Lors' land through adverse possession. Ultimately, the parties agreed to certain terms to resolve the dispute, including entering into a mutual no-contact order. These agreements were memorialized

in two agreed entries filed on April 8, 2022, entitled "Agreed Order" and "Agreed Judgment Entry Mutual No Contact Order."

{¶3} On July 27, 2022, Beavers filed a motion requesting that Lors be required to appear and show cause as to why he should not be held in contempt for failure to abide by the terms of the "orders dated April 8, 2022, to wit an Agreed Judgment Entry and a Mutual No Contact Order." (Underlining sic.) In her affidavit in support, Beavers maintained that Lors had failed to comply with "both of these Court Orders." (Underlining sic.) Beavers maintained that, pursuant to the "Agreed Judgment Entry," it was ordered that "both parties shall, within 30 days of this Entry, remove any of his/her personal (sic.) which may be encroaching upon the other's property." However, Beavers maintained that Lors' "person property (sic.)" remained on her property despite her having allowed Lors additional time for its removal. Beavers further maintained that Lors failed to repair his fence in accordance with the "Agreed Judgment Entry." In addition, Beavers alleged violations of the "Mutual No Contact Order," as the "same terms regarding property removal and fence repair, are included in the Mutual No Contact Order," and further Lors had thrown items on to Beavers' yard on May 10, 2022, in violation of the "Mutual No Contact Order."

{¶4} Along with her motion, Beavers filed instructions to the clerk to serve Lors directly by certified mail. The next day, a service notification was docketed indicating that counsel for the parties were notified of the filing of the motion to show cause through the court's electronic filing system. The trial court scheduled the motion for a hearing on September 29, 2022. Again, service notifications of the hearing notice were sent through the court's electronic filing system to the parties' attorneys. Thereafter, a summons for

2

contempt was issued, instructing Lors to appear at the court on September 29, 2022. A notation on the docket reflects that the summons was issued for service by certified mail to Lors. However, the certified mail was thereafter returned as "unclaimed." On September 21, 2022, counsel for Beavers filed instructions to the clerk to serve Lors the summons by regular mail. However, the docket does not affirmatively indicate that the clerk proceeded to reissue service by regular mail on Lors.

{¶5} On September 22, 2022, counsel for Lors filed a motion to vacate the April 8, 2022 "Agreed Order" and requested that the motion to show cause set for September 29, 2022, "be continued as it is based on the above order." In an attached brief in support, Lors' counsel stated that the April 8, 2022 "Agreed Order" failed to accurately reflect the parties' agreement regarding the boundary line. Beavers opposed Lors' motion to vacate and to continue the show cause hearing, maintaining that even were there a mistake in the "Agreed Judgment Entry," Lors still violated the agreement, and the "Mutual No Contact Order" violations did not pertain to the property line.

{¶6} The trial court scheduled the matter for a telephone conference on September 28, 2022. Subsequently, on October 3, 2022, the court rescheduled the motion to show cause hearing to November 3, 2022. A service notification was entered on the docket indicating service on the parties' counsel of the hearing notification. In addition, on October 4, 2022, the trial court issued an entry granting Lors' motion to continue and again noting in the entry that the hearing on the motion to show cause was reset to November 3, 2022. A corresponding service notification reflecting notice to the parties' counsel was also docketed.

3

{¶7}   Subsequently, Beavers filed a supplement to her motion to show cause, certifying service on counsel for Lors, alleging that Lors had committed additional violations of the "Mutual No Contact Order." In support, she maintained that Lors had thrown additional items into her yard, including a dead animal.

{¶8}   Thereafter, Lors' attorney moved to withdraw as counsel, stating that he had been unable to reach Lors after several attempts. On October 31, 2022, the court granted the motion, and specifically noted that the hearing on the motion to show cause "remains as previously set for November 3, 2022 at 2:30 P.M." A notation at the bottom of the entry indicates that a copy of the entry would be sent to Lors at his address.

{¶9}   Beavers' contempt motion proceeded to hearing on November 3, 2022. Beavers' counsel appeared in person. Beavers appeared at the hearing through remote contemporaneous video; although she was unable to view the courtroom and, instead, participated in the hearing by audio. Lors did not appear.[1] Thereafter, the trial court issued a judgment entry sanctioning Lors to 30 days of confinement and a $1,000.00 fine to be paid within ten days of service of the order, which could be purged upon satisfaction of certain conditions. Separate from the purge conditions, the court ordered Lors to pay Beavers' attorney fees in the amount of $4,379.87, pursuant to the terms of the agreed entry. The court ordered that Lors be served a copy of the contempt entry by sheriff's service.

{¶10}  Subsequently, Lors, through new counsel, filed a motion to vacate the contempt judgment pursuant to Civ.R. 60(B), and Lors also appealed the judgment. On

_____

1. Lors does not make an argument specific to the authority of the court to proceed with a contempt hearing in the absence of an alleged contemnor, and, therefore, our judgment should not be read to express any opinion on this issue.

4

Lors' motion, we issued a limited remand of 30 days to permit the trial court to rule on the Civ.R. 60(B) motion. The trial court denied the motion. Lors did not appeal the denial of his motion.

{¶11} This matter is now before us on Lors' appeal of the contempt judgment. Beavers has not filed an answer brief.

{¶12} At the outset, it is prudent to delineate the nature of the contempt at issue in this case. "Contempt of court has been variously defined as 'disobedience of an order of a court' and 'conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Allen v. Allen*, 2022-Ohio-3198, 196 N.E.3d 368, ¶ 61 (11th Dist.), quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "'A court may punish disobedience of its order, pursuant to R.C. 2705.02(A) or the court's inherent power to enforce its authority.'" *Allen* at ¶ 61, quoting *State ex rel. Adkins v. Sobb*, 39 Ohio St.3d 34, 35, 528 N.E.2d 1247 (1988).

{¶13} Contempt is characterized as direct or indirect and civil or criminal for certain purposes. Here, Lors' arguments on appeal reflect a position that the trial court found him in indirect, civil contempt, and we agree. *See In re: D.S.S.*, 2020-Ohio-5387, 163 N.E.3d 59, ¶ 12 (11th Dist.) (Indirect contempt is generally contemptuous behavior occurring outside the presence of the court.); *Denovchek* at 16 ("If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil." (Citation omitted.)).

{¶14} Mindful of the foregoing, we proceed to address Lors' assigned errors with respect to the contempt proceedings.

5

Case No. 2022-L-122

{¶15} In his first assigned error, Lors argues:

{¶16} "The trial court committed prejudicial error in holding Defendant/Appellant in indirect contempt where Defendant/Appellant received insufficient notice of contempt proceedings[.]"

{¶17} Lors' first assigned error implicates issues regarding the method of service in civil proceedings and notice of the proceedings. We address each in turn.

{¶18} With respect to the method of service, Civ.R. 4 through 4.6 govern service of the original complaint in a matter, which is served directly on a defendant. Civ.R. 5 provides that, subsequent to the initial complaint, service of filings may generally be made upon a represented party's attorney. In his brief, Lors cites Civ.R. 4.6, which pertains to reissuing of service by regular mail where certified mail has been returned as "unclaimed." Accordingly, Lors implicitly maintains that service of the motion and summons was required to be made directly upon him.

{¶19} There is conflicting case law as to whether contempt motions and summonses must be served directly on an alleged contemnor in accordance with Civ.R. 4 through 4.6 or whether service on an alleged contemnor's attorney in accordance with Civ.R. 5 is proper. *See, e.g., Quisenberry v. Quisenberry*, 91 Ohio App. 3d 341, 346, 632 N.E.2d 916 (2d Dist.1993) ("Inasmuch as there is no specified manner of process required for the filing of a motion for civil contempt, a person serving such a motion may do so in any manner authorized by the Ohio Rules of Civil Procedure. Specifically, because a motion for contempt is a written motion as contemplated by Civ.R. 5, process may be served in accordance with the methods permitted by that rule, i.e., by delivery, facsimile transmission, or ordinary mail service to the party or attorney representing that party.");

6

*but see Hansen v. Hansen*, 132 Ohio App. 3d 795, 799-800, 726 N.E.2d 557 (1st Dist.1999) ("Considering the unique nature of contempt proceedings—as well as the fact that the alleged contemnor is the person who faces punishment, not the attorney—we do not believe that service of the contempt motion on [the alleged contemnor's] attorney was enough. We agree with cases that have held that contempt motions do not fall under Civ.R. 5(B) and that there generally must be an attempt to serve such motions on the alleged contemnors directly.").

{¶20} Although Lors implicitly relies on the provisions of Civ.R. 4 through 4.6, he does not advance any argument why these rules, as opposed to Civ.R. 5, should apply to motions for contempt, and it is not this court's duty to create arguments on behalf of the appellant. *See Village of S. Russell v. Upchurch*, 11th Dist. Geauga Nos. 2001-G-2395, 2001-G-2396, 2003-Ohio-2099, ¶ 10. Accordingly, we proceed to address the issue of notice.

{¶21} As set forth in our recitation of the facts and procedural history, it is clear that counsel for Lors received notice of the proceedings, including notices of the hearing, through the court's electronic filing system prior to his withdrawal from representation of Lors. Further, with respect to the notice of hearing, the Ohio Supreme Court has stated: "Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact." *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 124, 502 N.E.2d 599 (1986); *see also Miller v. Halstead*, 11th Dist. Trumbull No. 2000-T-0088, 2001 WL 1149883, *1-2 (Sept. 28, 2001). Here, notice of the November 3, 2022 hearing was sent to Lors' original counsel, and

7

after counsel's withdrawal, directly to Lors. Further, the docket also contains entries dating back to October 3, 2022, reflecting the November 3, 2022 hearing date.

**{¶22}** Accordingly, Lors' first assigned error lacks merit.

**{¶23}** In his second assigned error, Lors maintains:

**{¶24}** The trial court committed prejudicial error in holding Defendant/Appellant in indirect contempt of the Agreed Order where the record contained no allegations that Defendant/Appellant had violated the Agreed Order[.]"

**{¶25}** Lors argues that the allegations contained in Beavers' motion to show cause and her supplemental motion only allege violations of the mutual no-contact order, and the trial court erred in finding him in contempt of both April 8, 2022 orders.

**{¶26}** R.C. 2705.02(A) provides that a person guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer" may be punished for contempt. Pursuant to R.C. 2705.03, "In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel."

**{¶27}** Here, Lors maintains that the written contempt charge did not allege that he violated the "Agreed Order." Lors argument seems to be based entirely on Beavers' failure to use the specifically captioned titles of the two agreed orders, each filed on April 8, 2022, entitled "Agreed Order" and "Agreed Judgment Entry Mutual No Contact Order." However, it is readily apparent from the motion, supplemental motion, and supporting affidavits that Beavers referred to each order, respectively, as the "Agreed Judgment Entry" and the "Mutual No Contact Order." Beavers' use of "Agreed Judgment Entry" to

8

refer to the entry entitled "Agreed Order" did not deny Lors written notice of the particular contempt charges of which he was accused.

{¶28} Further, both August 8, 2022 orders require the parties to remove their personal property that encroached on the other's property within 30 days. The only allegations that would support violations of the "Agreed Order" pertained to Lors' failure to remove his personal property from Beavers' property. As both entries required Lors to so proceed, the violations also amounted to violations of the "Agreed Judgment Entry Mutual No Contact Order." Thus, Lors would have suffered no prejudice even were we to conclude that Beavers did not sufficiently identify both orders in her motion.

{¶29} Accordingly, Lors' second assigned error lacks merit.

{¶30} We address together Lors' third and fourth assigned errors, in which he contends:

> [3.] The trial court committed prejudicial error by holding Defendant/Appellant in contempt and ordering specific performance of Defendant/Appellant's obligations under the Agreed Judgment Entry where the Parties agreed to another specific remedy for any breach of obligations under the Agreed Judgment Entry and where the Parties did not reserve the right to pursue other remedies[.]
>
> [4.] The trial court committed prejudicial error in imposing a term of incarceration of thirty days and a fine of $1,000 on Defendant/Appellant for contempt where said sanctions are contrary to law and/or the Agreed Judgment Entry.

{¶31} R.C. 2705.05(A) provides:

> (A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

9

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶32} Here, as set forth above, the trial court sanctioned Lors to 30 days of confinement and a fine of $1,000.00, which he could purge by doing the following within seven days of service of the order: (1) removing his garbage cans, firewood, and PVC pipe from Beavers' property, and (2) removing all other of his personal property from Beavers' property. Lors maintains in his third assigned error that the trial court erred by imposing contempt sanctions against him because in the mutual no-contact order, the parties agreed that "[v]iolation of this Order will result in liquidated damages of $500.00 per violation and would result in the violating party being liable to reimburse the other party for reasonable attorney fees and expenses in enforcing these provisions." Lors maintains that the contempt order essentially requires specific performance of the mutual no-contact order contrary to the parties' bargained-for damages provision contained in the mutual no-contact order. In his fourth assigned error, Lors contends that the trial court's sanctions exceed the sanctions permitted by statute.

{¶33} With respect to the third assigned error, although the parties agreed to the damages provision in the mutual no contact order, a court has inherent and statutory authority to enforce its orders through contempt proceedings. *See Allen*, 2022-Ohio-3198, at ¶ 61. Lors does not provide any support for the proposition that a court is

10

divested of this authority where the parties agree to alternative damage provisions for violations of an agreed entry.

{¶34} Accordingly, Lors' third assigned error lacks merit.

{¶35} As to his fourth assigned error, the Ohio Supreme Court questioned the legislature's authority to limit punishments for indirect contempt in *Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty. & Mun. Emp.*, AFL-CIO, 35 Ohio St.2d 197, 207, 299 N.E.2d 686 (1973), stating, "It is * * * highly doubtful that the General Assembly may properly limit the power of court to punish for contempt. Although it is conceded that the General Assembly may prescribe procedure in indirect contempt cases, the power to punish for contempt has traditionally been regarded as inherent in the courts and not subject to legislative control." *Compare State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75, 173 N.E.2d 331 (1961), paragraph four of the syllabus ("In imposing punishment for acts of *direct* contempt, courts are not limited by legislation but have the power to impose a penalty reasonably commensurate with the gravity of the offense. *State, ex rel. Turner v. Albin*, 118 Ohio St. 527, 161 N.E. 792, approved and followed." (Emphasis added.)).

{¶36} Subsequently, in *Pugh v. Pugh*, 15 Ohio St.3d 136, 142, 472 N.E.2d 1085 (1984), the Ohio Supreme Court addressed former R.C. 2705.05, which provided that an accused found guilty of contempt could be fined not more than $500.00 or imprisoned not more than ten days, or both. In *Pugh*, the appellant was ordered to serve two consecutive ten-day jail terms for violating two different terms of a separation agreement. *Id.* Both violations were brought in one action for contempt. *Id.* The Supreme Court held that the appellant could "only be imprisoned for a maximum of ten days if he is found guilty of

11

contempt," and could not "be imprisoned for each violation which composes the contempt charge." *Id.* at 143.

**{¶37}** However, here, the trial court did not impose separate sanctions for each violation of the prior orders. Instead, it relied on its inherent authority to craft a contempt sanction. Although *Pugh* did not specifically address the issue of whether a court has inherent authority to exceed the statutory limitations on contempt sanctions for a singular contempt finding, we note that the Second District has held that "[n]otwithstanding, the language of *Pugh,* \* \* \* the common pleas court's authority to punish contempt is not limited by R.C. 2705.05." *Carter v. Carter*, 2d Dist. Montgomery Nos. 14409, 14530, 14574, 1994 WL 660811, \*14 (Nov. 23, 1994); *see also Johnson v. Johnson*, 2020-Ohio-1644, 154 N.E.3d 310, ¶ 22 (2d Dist.). In support, the Second District relied on *State ex rel. Johnson v. Cty. Court of Perry Cty.*, 25 Ohio St.3d 53, 54, 495 N.E.2d 16 (1986), which post-dated *Pugh* and addressed the inherent authority of certain courts to punish for contempt. Therein, the Supreme Court determined that statutorily-created courts have no inherent authority to define and punish indirect contempt. *Id.* In reaching this conclusion, the Supreme Court contrasted the powers inherent in constitutionally-created courts:

> "A court created by the constitution has inherent power to define and punish contempts, such power being necessary to the exercise of judicial functions." *State, ex rel. Turner, v. Albin* (1928), 118 Ohio St. 527, 161 N.E.2d 792, paragraph one of the syllabus. "The general assembly is without authority to abridge the power of a court created by the constitution to punish contempts \* \* \*, such power being inherent and necessary to the exercise of judicial functions \* \* \*." *Hale v. State* (1896), 55 Ohio St. 210, 45 N.E. 199, paragraph one of the syllabus. Statutory powers to deal with contempts are merely cumulative and in addition to the inherent authority of the court. *Univis Lens Co. v. United*

12

> *Electrical Radio & Machine Workers of America* (1949), 86
> Ohio App. 241, 245, 89 L.Ed.2d 658 [41 O. O. 158]. However,
> where a procedure has been prescribed for the exercise of the
> power to punish contempts by rule or by statute, it is the duty
> of the court to follow such procedure. *See In Matter of Lands*
> (1946), 146 Ohio St. 589, 595, 67 N.E.2d 433 [33 O.O. 80].

*State ex rel. Johnson* at 54. Accordingly, the Second District has determined that, "[b]ecause the holding in *Pugh* relied on R.C. 2705.05, which the Supreme Court of Ohio later indicated does not limit the trial court's inherent authority to punish contempts," an appellate court should simply apply the abuse of discretion standard of review. *Johnson* at ¶ 22, citing *Carter* at *14. Other appellate district courts have likewise concluded that common pleas courts are not bound by the statutory limitations on sanctions for indirect contempts. *See, e.g., Caldwell v. Caldwell*, 4th Dist. Gallia No. 02CA17, 2003-Ohio-1752, ¶ 18; *Faubel v. Faubel*, 7th Dist. Mahoning Nos. 05-MA-101, 05-MA-210, 2006-Ohio-4679, ¶ 65; *Copley Twp. Bd. of Trustees v. W.J. Horvath Co.*, 193 Ohio App.3d 286, 2011-Ohio-1214, 951 N.E.2d 1054, ¶ 10 (9th Dist.); *Heinrichs v. 356 Registry Inc.*, 70 N.E.3d 91, 2016-Ohio-4646, ¶ 75-76 (10th Dist.); *Davis v. Davis*, 12th Dist. Butler No. CA2021-11-139, 2022-Ohio-3179, ¶ 36.

{¶38} We recognize that this court previously stated in dicta that the Ohio Supreme Court would likely uphold the statutory limitations on contempt sanctions and not follow the logic from *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 675 N.E.2d 1345 (2d Dist.1996), which held that courts are not bound to statutory limitations on contempt sanctions. *Concord Twp. Trustees v. Hazelwood Builders, Inc.*, 11th Dist. Lake No. 2000-L-040, 2001 WL 285822, *3 (Mar. 23, 2001). However, based upon the inherent authority of constitutionally-created courts and the Ohio Supreme Court's discussion in

13

Case No. 2022-L-122

*State ex rel. Johnson*, we agree with those districts that hold that common pleas courts are not restricted by the statutory limitations on indirect contempt sanctions.

{¶39} Accordingly, the trial court had discretion in crafting a sanction for contempt and was not restricted by statutory limitations. As Lors has not advanced an argument that the trial court abused its discretion, his fourth assigned error lacks merit.

{¶40} In his fifth assigned error, Lors maintains:

{¶41} "The trial court committed prejudicial error in holding Defendant/Appellant in contempt where the record contains insufficient evidence to support the contempt finding[.]"

{¶42} In Lors' fifth assigned error, he initially challenges the propriety of Beavers' counsel's use of leading questions and then challenges Beavers' authentication of the exhibits during the hearing because she could not view the exhibits that her counsel described. However, as Lors did not appear for the contempt hearing, he failed to lodge any objections to Beavers' counsel's use of leading questions or to Beavers' authentication of the exhibits based only on description by counsel. "A party who does not bring an alleged error to the trial court's attention forfeits the right to challenge that error on appeal." *Redding v. United States Parachute Assn., Inc.*, 11th Dist. Geauga No. 2022-G-0024, 2023-Ohio-884, ¶ 6, citing *Ashmore v. Eversole*, 2d Dist. Montgomery No. 15672, 1996 WL 685568, *6 (Nov. 29, 1996). Although these challenges are forfeited, this court may recognize plain error. However,

> [I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial

14

process, thereby challenging the legitimacy of the underlying
judicial process itself.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. This is not such a case.

{¶43} Last, Lors maintains that the court's finding that he had not removed his firewood, PVC pipe, and garbage cans from Beavers' property was not supported by the evidence because Beavers provided no testimony that the firewood and PVC piping belonged to Lors. At the hearing, Beavers indicated that the garbage cans located on her property as shown in an exhibit belonged to Lors. With respect to the firewood, Beavers testified that the firewood was pushed up against her house, as shown in another exhibit, but she did not at the time specifically indicate that the firewood belonged to Lors. With respect to the PVC pipe, Beavers testified that the piping was on her property as shown in another exhibit, and she testified that the pipes had been located there since this case began. However, again Beavers did not specifically state that the PVC pipes belonged to Lors. Thereafter, during a discussion between the court and Beavers' counsel, counsel indicated that all of these items were subject to removal by Lors under the orders, and Lors failed to remove them. Following this exchange, the court asked Beavers if Lors had indicated to her why he would not move the garbage cans. Beavers replied:

> [BEAVERS]: He is not a big fan of my cameras and he wants all the cameras removed.
>
> THE COURT: Okay.
>
> [BEAVERS]: And so I think his logic is if I don't move the cameras he won't move his stuff.

{¶44} We recognize that statements of counsel are not evidence. *See Corp. Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299,

15

Case No. 2022-L-122

695 N.E.2d 743 (1998). However, here, counsel's statement that the order required Lors to remove all of the items identified in the exhibits provides meaning to Beavers' later statement that Lors would not remove "his stuff," instead of simply replying to the court's question of why Lors would not remove his garbage cans. Based on Beavers' statements, the trial court could reasonably infer Lors' ownership of the firewood and PVC pipe.

{¶45} Accordingly, Lors' fifth assigned error lacks merit.

{¶46} In his sixth assigned error, Lors contends:

{¶47} "The trial court committed prejudicial error in denying Defendant/Appellant's motion for relief from judgment under Civil Rule 60(B) based upon a misinterpretation of the law and a misunderstanding and/or mischaracterization of the facts."

{¶48} Lors did not appeal from the denial of his Civ.R. 60(B) motion. Therefore, "because we do not have a separate notice of appeal from the trial court's judgment on the Civ.R. 60(B) motion, we can neither decide nor consider that motion since it was filed *after* the trial court issued its decision and judgment entry on the jurisdictional matter, which is the subject of *this* appeal." (Emphasis sic.) *Plaza v. Kind*, 3d Dist. Auglaize Nos. 2-18-05, 2-18-06, 2018-Ohio-5215, ¶ 14, citing *Bank of New York v. Bartmas*, 10th Dist. Franklin No. 04AP-1011, 2005-Ohio-6099, ¶ 7. "In other words, we do not have jurisdiction to hear arguments regarding the denial of a Civ.R. 60(B) motion in a direct appeal from the trial court's original judgment." *Plaza* at ¶ 14, citing *Brooks v. Merchant*, 8th Dist. Cuyahoga No. 89462, 2008-Ohio-932, ¶ 13.

{¶49} Accordingly, Lors' sixth assigned error is not properly before us.

16

Case No. 2022-L-122

**{¶50}** The judgment of the trial court is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.